**Richard JOHNSON,**
**Petitioner-Appellant,**

v.

**UNITED STATES of America,**
**Respondent-Appellee.**

No. 85–1378.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1986.

Decided Nov. 4, 1986.

Rehearing and Rehearing En Banc Denied Jan. 14, 1987.

Ada S. Cooper, Jenner & Block, Chicago, Ill., for petitioner-appellant.

Laurie J. Barsella, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for respondent-appellee.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and SWYGERT, Senior Circuit Judge.

POSNER, Circuit Judge.

This appeal from the denial of Richard Johnson's petition to vacate his sentence requires us to consider in what circumstances a criminal defendant can use 28 U.S.C. § 2255, the federal prisoner's substitute for habeas corpus, to correct violations of Rule 32 of the Federal Rules of Criminal Procedure. As amended in 1983, Rule 32 requires that the report of the presentence investigation be shown to the defendant personally (not just to his lawyer) before sentencing, so that he can point out any factual inaccuracies to the sentencing judge. Violation of Rule 32 is reversible error (requiring that the defendant be resentenced) if a claim that the judge relied on inaccurate information in the presentence report in sentencing the defendant is made and not resolved. *United States v. Eschweiler*, 782 F.2d 1385, 1389 (7th Cir. 1986); *United States v. Rone*, 743 F.2d 1169 (7th Cir.1984). And in administering this standard we have been reluctant to characterize violations of the rule as harmless. See *United States v. Sosa*, 789 F.2d 1257, 1264 (7th Cir.1986); *United States v. Eschweiler, supra*, 782 F.2d at 1390–91.

Johnson had been the president of a small-loan company that had gotten into financial trouble, and he had devised a scheme by which his company discounted phoney loan contracts to Walter E. Heller & Co., receiving some $141,000 in advances from Heller on these contracts. Johnson

had involved his wife and mother, who were officers of his company, in the scheme. He pleaded guilty, after the effective date of the amended Rule 32, to two counts of mail fraud. At his sentencing hearing, when asked whether he had anything to say on his own behalf, Johnson said, "Only that I'm sincerely sorry, even more sorry that I involved my family in it." The presentence investigation report, which was shown to Johnson's counsel but not to Johnson, indicated that he had previously been arrested eight times, had served one year in a pretrial diversion program for having committed bank fraud and embezzlement, had served 10 days in jail for contempt of court, and had indeed involved his family in the scheme to defraud. It also described Johnson as a "mover" and "shaker" and indicated that Walter E. Heller & Co. claimed to have lost $919,000 as a result of the fraud. During the sentencing hearing the assistant U.S. attorney commented on a fraud that had not been mentioned in the presentence report, but defense counsel objected and the judge said he would not consider this incident in sentencing Johnson.

The judge then explained the basis on which he would sentence Johnson:

The court has always adhered to the view in most cases that everyone is entitled to a second chance. Mr. Johnson had his chance. He had his second chance. And he proved to the court and apparently to the government that he is not a proper candidate for probation. Albeit he did plead guilty, I also agree with the government. Mr. Johnson shows utterly no remorse whatever for his actions. I think to grant probation in Mr. Johnson's case would be a mockery. I don't know how else to characterize it. Not only did he engage in this scheme after he had been treated with compassion by the U.S. Attorney and after the court had treated him compassionately, he involved his family members, and that requires some period of incarceration in the court's humble opinion.

The court then sentenced Johnson to three years in prison to be followed by three years on probation, fined him $2,000, and ordered him to make restitution to Heller of $75,000.

About a year later Johnson, who had not appealed from his conviction or sentence, moved to vacate the sentence on the ground that the judge had violated Rule 32 and relied on false information in sentencing him. Johnson complained that listing his arrests in the presentence report without explaining their circumstances had given a misleading impression of his propensity to commit crimes, that the words "mover" and "shaker" should not have been used, that one of the charges mentioned in the report was not, in fact, on his record, and that Heller hadn't lost $919,000 and indeed had received $135,000 in interest payments from Johnson. The district judge, without resolving the accuracy of these charges, refused to vacate the sentence. He said that in sentencing Johnson he had not relied on any of the alleged misinformation in the presentence report, but had

relied only upon the incident involving the prior pretrial diversion program and not upon the list of prior arrests or the claimed loss of the victim. The Court's reference to a first chance given to the defendant by the court and by the U.S. Attorney can only refer to the pretrial diversion program since none of the other incidents contained in the presentence report involved federal crimes.... The only other factor mentioned was the involvement of defendant's family in the fraudulent loan scheme. Since neither of these two factors were challenged by the defendant as inaccurate, the Court did not rely on any controverted matter in passing sentence on the defendant and therefore no ground exists to grant him a new sentencing hearing.

Johnson moved for reconsideration, arguing that the presentence report had also been inaccurate in saying that he had involved his family in the scheme. The judge denied the motion for reconsideration, and this appeal followed.

Johnson makes three principal arguments: Rule 32 was violated; he was de-

nied due process of law; he did not receive effective assistance of counsel.

■ 1. Rule 32 was indeed violated, and we find the violation both inexplicable and inexcusable. We can understand how a busy district judge might overlook a recent amendment to the Federal Rules of Criminal Procedure but not how an assistant U.S. attorney could fail to draw the oversight to the judge's attention at the sentencing hearing so that the mistake could be corrected on the spot. If Johnson had appealed from the sentence we would have reversed and directed the judge to comply with Rule 32 and resentence Johnson.

■ But Johnson did not appeal. Instead he waited almost a year and then filed a motion for postconviction relief under section 2255. The grounds for relief under this section are narrower than the grounds for relief on direct appeal. On direct appeal a defendant can complain of any error committed in the district court, other than a harmless error; in a section 2255 proceeding he must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The legislative history shows, and the Supreme Court has held, that the purpose of section 2255 was "simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined." *Hill v. United States*, 368 U.S. 424, 427, 82 S.Ct. 468, 470, 7 L.Ed.2d 417 (1962) (footnote omitted). And, of course, habeas corpus is not a proper route for complaining about simple trial errors. The policy of finality in criminal cases, attenuated though it is compared to the policy of finality in civil cases, retains some strength—enough to make the direct appeal (which the defendant must file within 10 days of being sentenced—habeas corpus and section 2255 have no time limits) the exclusive route for complaining about errors that demonstrate neither "a fundamental defect which inher-

ently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." *Id.* at 428, 82 S.Ct. at 471. The Supreme Court applied this standard in *Hill* to the question whether a violation of Rule 32 could be corrected under section 2255, and held that it could not be. The Court reaffirmed *Hill* in *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). See also *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979).

■ That would be the end of Johnson's case, at least insofar as it rests on the violation of Rule 32, but for language in *Timmreck* suggesting that while a "technical" violation of one of the Federal Rules of Criminal Procedure cannot be corrected in a proceeding under section 2255, conceivably a violation that "occurred in the context of other aggravating circumstances" could be. 441 U.S. at 784–85, 99 S.Ct. at 2087–88. The Court did not hold it could be; it merely left the question open. All that we understand by this language is that if the circumstances of violation are such that the defendant's right to due process of law has been denied, he may be able to complain under section 2255—not of the rule violation as such, however, but only of the violation of due process. We find it hard to imagine an error that was either "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure," yet would not violate the due process clause of the Fifth Amendment. And we also think these formulations come to much the same thing, for the most "rudimentary demand" of "fair procedure" is that the trial not be infected by the kind of error likely to lead to a miscarriage of justice, i.e., the conviction of an innocent person. Cf. *Darden v. Wainwright*, —— U.S. ——, 106 S.Ct. 2464, 2473 and n. 15, 91 L.Ed.2d 144 (1986); *Donnelly v. De Christoforo*, 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). In any event the due process clause requires compliance with at least "the rudimentary demands of

fair procedure," whatever precisely they are. It therefore is not necessary to discuss Johnson's Rule 32 complaint further; we can turn directly to his claim that the district court deprived him of due process of law.

In taking this approach, we have not overlooked *Davis v. United States*, 417 U.S. 333, 345, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974), which holds that in applying the standard of *Hill*, the courts are not confined to "claims 'of constitutional dimension.'" Davis had claimed that his "conviction and punishment [were] for an act that the law does not make criminal," and the Court held that such a claim is actionable under section 2255. *Id.* at 346–47, 94 S.Ct. at 2305. To punish a person criminally for an act that is not a crime would seem the quintessence of denying due process of law, and it seems that what the Court had in mind in saying that section 2255 is not limited to claims of constitutional dimension is simply that in some cases a defendant may be able to make a statutory argument the basis for a due process claim. If you argue that Statute X does not make your act a crime, you are making a statutory argument, but in support of a due process claim. This is not because every erroneous statutory interpretation is a denial of due process—a ridiculous proposition. It is because punishing a person for engaging in conduct that the polity has not made criminal is inconsistent with the proposition that state or federal government may not, consistently with the Constitution, deprive persons of life, liberty, or property, except through due process of law.

Another distinction builds on the fact that habeas corpus (for which as we have said section 2255 is designed to be an identical substitute, so far as the issues in this case are concerned) for prisoners requires a showing that the prisoner "is in custody in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2241(c)(3). The custody could be lawful even though a violation of law had occurred at the trial or sentencing. Indeed, without this distinction the difference between direct and collateral attack on criminal judgments would be erased. Custody is unlawful if the prisoner is being held for committing a crime that does not exist, but not if there just was some irregularity in the procedure by which his guilt or punishment was determined. If *Davis* goes further than we are supposing and makes all violations of federal statutes or rules actionable under section 2255, it is inconsistent with *Hill*, *Timmreck*, and many other cases, and indeed with the whole distinction between direct appeal and collateral attack.

Our decision in *Krilich v. United States*, 502 F.2d 680, 682 and n. 3 (7th Cir.1974), suggests in dictum that statutory violations are actionable under section 2255 even if they do not involve a fundamental defect or breach of rudimentary principles of fair procedure—even if they do not violate due process. But this dictum cannot be considered authoritative in light of *Timmreck* and, indeed, *Davis* itself. Granted, our recent decision in *Kramer v. United States*, 788 F.2d 1229, 1231, supplementary opinion, 798 F.2d 192 (7th Cir. 1986), considered the merits of a Rule 32 violation presented in a motion under 28 U.S.C. § 2255. But the only issue we considered was whether Kramer had waived his right to collateral relief by failing to press his Rule 32 claim on direct appeal. The issue whether such a claim can be made in a collateral attack on the sentence was neither raised nor considered, and was treated as open in still another *Kramer* opinion, see *Kramer v. United States*, 803 F.2d 896, 899 (7th Cir.1986).

■ 2. If as Johnson claims the district court relied on false information in sentencing him, without giving him a chance to correct the information, he may have been denied due process of law. *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States ex rel. Welch v. Lane*, 738 F.2d 863, 864–65 (7th Cir.1984). (We say "may" rather than "was" to avoid getting tangled in the question, irrelevant to our disposition of this appeal, what the Supreme Court meant in *Tucker* by "misinformation of constitutional magnitude." 404 U.S. at 447, 92 S.Ct. at

591.) But there is no factual basis for this claim. The district judge was emphatic, in his order denying Johnson's motion to vacate the sentence, that he had not relied on any of the information in the presentence report that Johnson claims is false. Pointing out that this order was rendered more than a year after the sentencing, Johnson argues that the judge surely could not remember what parts of the presentence report he had or had not relied on. This would be a more powerful argument if the judge's recollection were not entirely consistent with his remarks at sentencing. The remarks purport to give the judge's reasons for imposing the sentence he did: that Johnson had breached the trust implied in allowing him to participate in a pretrial diversion program—which is to say, allowing him to escape punishment—for his previous fraud, and that he had involved his family in the fraud. The first fact is uncontested, and the second Johnson admitted at his sentencing hearing. His belated attempt to deny that he involved his family is entirely unconvincing, given what he said at the hearing and his failure to try to substantiate the denial.

Of course it is possible that the judge's memory was playing tricks on him, that in fact when he sentenced Johnson he was under the influence of information in the presentence report that he didn't bother to mention, and that over the course of a busy year he forgot about his unrecorded mental processes. But although this is possible we have no ground for concluding that it is probable. Judge Bua is an experienced and responsible judge, who is sensitive to the rights of criminal defendants. We have no basis for discrediting his unequivocal report of his recollections, which persuade us that he did not in fact rely on inaccurate information in sentencing Johnson. See *Lawary v. United States*, 599 F.2d 218, 226–27 (7th Cir.1979) (per curiam).

We do not suggest that the type of ex post facto determination that Judge Bua made can always cure a Rule 32 violation; *Sosa* and *Eschweiler* suggest not, and for the practical reason that it is easier for the district judge to comply with Rule 32 and resentence the defendant than to rack his brain to recall what parts of the presentence report he relied on in sentencing the defendant the first time. But the issue on this appeal is not whether Rule 32 was violated; it is whether the violation denied Johnson due process of law. It did not.

Johnson also argues that the judge's failure to tell him that he had a right to read the sentencing report, and failure to give him a chance to correct any errors in the report, denied him due process of law. Even before the 1983 amendments to Rule 32 required the sentencing judge to show the defendant the presentence report, it was the better practice to do so; among other things it was a good way of making sure the judge did not inadvertently deny the defendant due process by sentencing him on the basis of inaccurate information. But no one thought that the old Rule 32, let alone those basic concepts of fair procedure that are encompassed by the term "due process of law," *required* that the report be shown to the defendant, especially when (as in this case) it was shown to the defendant's counsel. If we accepted Johnson's contention we would come close to elevating the 1983 amendment, which required that the defendant be given the report personally, to constitutional status, thereby perhaps giving the amendment an indefinite retroactive effect. Prisoners sentenced many years ago but still in prison, on probation (like Johnson), or suffering collateral consequences (such as an enhanced sentence for another crime), might demand to be resentenced.

In any event, the failure to show Johnson the report could not have caused a miscarriage of justice, since Judge Bua did not rely on any contested or contestable portions of the report in sentencing him. As suggested earlier in this opinion, there can be no denial of due process by a procedural irregularity that is not itself a constitutional violation and that is unlikely to have changed the outcome of the criminal proceeding. *United States v. Mazzone*, 782 F.2d 757, 763 (7th Cir.1986). The point is not that a harmless error is not reversible but that a procedural irregularity which

does not contravene some specific constitutional right does not achieve constitutional significance through the due process clause unless it is not only an egregious but a highly prejudicial error—one quite likely to have changed the outcome, and thus to have infected the trial with fundamental, and not merely technical, unfairness. See *Darden v. Wainwright, supra,* 106 S.Ct. 2473 and n. 15; *United States ex rel. Bonner v. DeRobertis,* 798 F.2d 1062, 1067–69 (7th Cir.1986). A prosecutor who in closing argument impugns the honesty of the defendant's lawyer, or argues that the government would not prosecute a person who wasn't guilty, or otherwise injects improper considerations into the case infringes the defendant's procedural rights; but there is a denial of due process of law only if the defendant can show that probably he was convicted *because* of the improper conduct, in which event his conviction was a miscarriage of justice. *United States v. Mazzone, supra,* 782 F.2d at 763–64. "Miscarriage of justice" is legalese for convicting an innocent person, more precisely a person who under the rules of the criminal justice process should have been acquitted. The standard announced in *Hill* is similar, see 368 U.S. at 428–29, 82 S.Ct. at 471–72, and is not satisfied here.

We emphasize that prejudicial error and nonharmless error are not the same thing. An error is deemed harmless when the court is confident that it made no difference to the outcome, prejudicial when the court thinks it probably (not certainly) did make a difference; there is a fine, but discernible, difference between the two standards. See *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984).

■ 3. Johnson's argument that his counsel was ineffective is based primarily on counsel's failure to bring the Rule 32 violations to the district judge's attention at or after the sentencing hearing, or failing that to advise Johnson to appeal from the sentence on the basis of those violations. Denial of effective assistance of counsel can of course be raised in a motion under section 2255; and if the denial were proved, a suitable remedy would be to order that Johnson be resentenced in a proceeding that complied with Rule 32.

■ The issue of ineffective assistance of counsel was not raised before the district judge—it was raised for the first time in this appeal—and ordinarily we would not attempt to decide it without the benefit of the district judge's views. But of course we can decide it if the issue is sufficiently clear-cut. *United States v. Dyer,* 784 F.2d 812, 816 (7th Cir.1986). It is in this case. Even assuming that Johnson's counsel fell below minimum professional standards in representing him, it is apparent that Johnson was not denied his constitutional right to effective assistance of counsel. To be actionable, ineffective assistance must be prejudicial; Johnson must show that if his counsel had rendered effective assistance, it probably would have made a difference in the sentence. *Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). This appears to be much the same, perhaps exactly the same, standard used to decide whether a procedural irregularity is sufficiently egregious to rise to the level of a due process violation and whether an error to which no timely objection was made is nevertheless reversible because "plain." *United States v. Wolf,* 787 F.2d 1094, 1098 (7th Cir.1986); *United States v. Silverstein, supra,* 732 F.2d at 1349. At least we doubt the practical ability of courts to multiply the distinctions among kinds and degrees of harm or prejudice more than they have done already (as in *Murray v. Carrier,* —— U.S. ——, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986)). In any event we are confident that the alleged ineffective assistance of counsel was not prejudicial, since as we have said Judge Bua did not rely on any of the allegedly false information in the presentence report in sentencing Johnson. Nonprejudicial oversights by counsel no more violate the Sixth Amendment's right to counsel than they do the Fifth Amendment's right to due process.

An issue we need not resolve is whether Johnson's failure to take a direct appeal from his sentence operated as a waiver of

his right to attack the sentence collaterally. Ordinarily a criminal defendant is not allowed to raise by way of motion under section 2255 a ground that he could have raised in a direct appeal from his conviction (or sentence), *Norris v. United States,* 687 F.2d 899 (7th Cir.1982), but there are various exceptions, including ineffective assistance of counsel. Since we have held that Johnson is not entitled to relief under section 2255 wholly apart from any waiver, we need not decide whether he also waived the right to seek such relief.

Insofar as Johnson wants to correct inaccuracies in his presentence report that might affect the date of his parole, he must use the procedure outlined in *United States v. Mittelsteadt,* 790 F.2d 39 (7th Cir.1986) (per curiam).

The order denying his motion to set aside his sentence is

AFFIRMED.

SWYGERT, Senior Circuit Judge.

I respectfully dissent. In the circumstances of this case, petitioner Richard Johnson had the right to be sentenced after full compliance with Rule 32 of the Federal Rules of Criminal Procedure. That Rule provides that the sentencing court shall afford the defendant and his counsel the opportunity to read and discuss the presentence investigation report before the imposition of sentence and to comment on the report. Section 32(c)(3)(D) provides that if the defendant and his counsel allege any factual inaccuracy in the report, the court shall make a finding whether the report did in fact contain inaccurate information or that no determination on that point is necessary because the controverted matter will not be considered by the court in forming its sentence. The Rule further provides that a written record of such findings and determinations shall be made. In *United States v. Rone,* 743 F.2d 1169 (7th Cir.1984), this court elaborated upon the Rule, stating: "The district court at the sentencing hearing need directly ask the defendant only three questions—whether he or she had an opportunity to read the report, whether the defendant and defense

counsel have discussed the report, and whether the defendant wishes to challenge any facts in the report." *Id.* at 1174.

There can be no question that the district court here violated Rule 32 by not inquiring of the defendant and his counsel whether they had discussed the presentence report and whether the defendant wished to challenge any facts in the report. In fact, the record indicates that although his counsel was furnished a copy of the report, the petitioner was not allowed to read it before sentencing so that he might detect the alleged inaccuracies that he now asserts. Today this court acknowledges that the Rule was not complied with: "Rule 32 was indeed violated, and we find the violation both inexplicable and inexcusable.... If Johnson had appealed from the sentence we would have reversed and directed the judge to comply with Rule 32 and resentence Johnson."

Johnson did not appeal because he was unaware of the alleged inaccuracies until he read the presentence report during a parole hearing while incarcerated. Thereafter, he secured the services of a new lawyer who instituted a section 2255 proceeding.

I agree with the majority that when considering a violation of Rule 32, the grounds for relief under 28 U.S.C. § 2255 are more restrictive than those that can be asserted in a direct appeal. Section 2255 may reach only errors occurring during the sentencing procedure that constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or an "omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

The purpose of Rule 32(c)(3)(D) is to ensure a fundamental requirement of fair procedure: that a defendant be sentenced on the basis of accurate information. If the district court considers inaccurate information in determining the sentence, an error of constitutional dimension occurs and is cognizable in a section 2255 proceeding. I do not comprehend that the majority

takes a contrary view. Indeed, this court in *United States v. Eschweiler*, 782 F.2d 1385 (7th Cir.1986), specifically held that Rule 32(c)(3)(D) "protects a defendant's due process right to be sentenced on the basis of accurate information" and, as I interpret our recent decision in *Kramer v. United States*, 788 F.2d 1229 (7th Cir.1986), a section 2255 proceeding is appropriate in circumstances quite similar to those presented in the case at bar. An earlier decision of this court is to the same effect. *Krilich v. United States*, 502 F.2d 680, 682 (7th Cir.1974) ("Non-compliance with a statute which has as one of its purposes the effectuation of a constitutional right presents an issue of sufficient constitutional dimension to warrant consideration under 28 U.S.C. § 2255.").

The determinative issue in the instant case is not whether section 2255 may be an appropriate vehicle to remedy a Rule 32 violation in egregious situations, but whether the district judge can cure a defect in the sentencing proceeding by a *post hoc* determination that the alleged inaccuracies had no role in the fashioning of the sentence.

Although there is authority in this circuit to the effect that the sentencing judge may rely on his memory and rule that he did not rely on inaccurate information, *Lawary v. United States*, 599 F.2d 218 (7th Cir.1979), that proposition is not without exception. Reversal is required when reliance is "manifest and incontrovertible" from the record even in the face of the court's disclaimer of reliance. *Id.* at 227. The converse should be equally true. If nonreliance is not manifest and incontrovertible from the record, reversal should be required despite a disclaimer of reliance. Here the record is far from clear as to what the district judge relied on in imposing sentence. Indeed, the judge in his memorandum decision denying Johnson's section 2255 petition stated: "[H]ere, it is unclear from the record whether the judge relied on alleged inaccurate information in the sentencing proceeding...." When the question of whether there was reliance on the alleged misinformation contained in the presentence report is admittedly unclear from the record, a

determination of nonreliance made by the district court one year after sentencing cannot cure the error. *United States v. Harris*, 558 F.2d 366 (7th Cir.1977); *United States v. Eschweiler*, 782 F.2d at 1390 n. 11 ("[W]here it is unclear whether the sentencing judge relied on the contested information, resentencing would resolve the matter."). Only a clear record can allow a judge to state with the requisite assurance that he did not rely on the disputed information in imposing sentence. Absent such support in the record, a belated determination of nonreliance, if permitted, might well result in complete circumvention of the salutary purpose of the Rule.

I would remand for a fresh sentencing.