UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony C. KOVIC, Defendant-Appellant.

No. 86–2617.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1987.

Decided Sept. 17, 1987.

Before WOOD, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Anthony C. Kovic appeals the district court's denial of his petition to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. We affirm.

I

On February 26, 1981 a jury convicted Kovic of 17 counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of knowingly and willfully affecting commerce by extortion, under color of official right (Hobbs Act), in violation of 18 U.S.C. § 1951. Kovic had been the chief of the Motor Maintenance Division, the highest ranking civilian in the Chicago Police Department. From this position of public trust, Kovic helped to initiate, organize and promote a scheme which eventually bilked the citizens of Chicago of over $600,000 by fraudulently billing the Police Department for excessive repairs allegedly performed on damaged police department vehicles. Kovic's conviction resulted from his central role as the "kingpin" of this massive fraud against the City of Chicago. Kovic was sentenced to a term of 20 years imprisonment under the Hobbs Act; 20 years imprisonment under the 17 mail fraud counts, the latter to run concurrently with the Hobbs Act sentence; together with a fine of $27,000. These sentences were to run concurrently with a 12–year sentence previously imposed in a related case.

Kovic appealed his conviction represented by Attorney David P. Schippers, who also had been his trial counsel, claiming, *inter alia*, prejudicial joinder of defendants and attacking the sufficiency of the evidence. We affirmed the conviction.[1] Kovic chose to remain free on bond and began serving his sentence on January 3, 1983. On June 15, 1983, David Lubell,[2] on behalf

Laurie N. Feldman, Asst. U.S. Atty., Chief Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Michael R. Abramovic, Chicago, Ill., for defendant-appellant.

---

1. *United States v. Cavale,* 688 F.2d 1098 (7th Cir.1982), *cert. denied,* 459 U.S. 1208, 74 L.Ed.2d 513 (1983) (Kovic's petition for a writ of certiorari was limited to questions concerning the admissibility of co-conspirators' statements and for severance).

2. The Government states in its brief that on June 15, 1983, Lubell was a member of the Schippers firm. However, the record does not support this conclusion. While it is evident that there was a relationship between Lubell and Schippers, it is unclear whether Lubell was in

of Kovic, made a Rule 35(b)[3] motion requesting a reduction of Kovic's 20–year sentence. The motion set forth that (1) Kovic was in poor health and was suffering from life threatening diseases, (2) conditions in the prison were overcrowded, and (3) a plea for leniency. The court denied the motion and Lubell filed an appeal.[4] On July 23, 1984, this court in an unpublished order[5] affirmed, holding that the district court did not abuse its discretion in denying the Rule 35 motion.

On May 29, 1986, over five years after his sentencing, Kovic filed a petition to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255, the federal prisoners' equivalent of a habeas corpus petition. Kovic asserted:[6]

(1) That the district court relied on erroneous facts contained in Kovic's presentence report in imposing sentence violating Rule 32 of the Federal Rules of Criminal Procedure and Kovic's due process rights;

(2) that the district court coerced Kovic to either cooperate with the Government and waive his right of appeal and privilege against self-incrimination or remain silent thereby incurring a harsher sentence;

(3) that his counsel provided ineffective assistance of counsel by, *inter alia,* failing to preserve these said errors at sentencing or by failing to raise them subsequently.

The Government argued that Kovic had waived these arguments because he had failed to raise them either at sentencing, on direct appeal, at the Rule 35 motion or on his appeal from the Rule 35 motion. Because Kovic failed to show cause excusing

---

fact a member of Schippers' law firm. Lubell, a member of the New York bar, apparently maintained a New York office. Furthermore, Kovic's affidavit reveals that Kovic retained a New York attorney to handle his Rule 35 motion and its subsequent appeal.

**3.** On June 15, 1983, Rule 35 provided:

(a) CORRECTION OF SENTENCE. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) REDUCTION OF SENTENCE. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Effective November 1, 1987, Rule 35 in its entirety will be amended to provide as follows:

(a) CORRECTION OF A SENTENCE ON REMAND. The court shall correct a sentence that is determined on appeal under 18 U.S.C. 3742 to have been imposed in violation of law, to have been imposed as a result of an incorrect application of the sentencing guidelines, or to be unreasonable, upon remand of the case to the court—

(1) for imposition of a sentence in accord with the findings of the court of appeals; or

(2) for further sentencing proceedings if, after such proceedings, the court determines that the original sentence was incorrect.

(b) CORRECTION OF SENTENCE FOR CHANGED CIRCUMSTANCES. The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code. The court's authority to lower a sentence under this subdivision includes the authority to lower such sentence to a level below that established by statute as a minimum sentence.

**4.** The record discloses that Schippers also made a motion to make Kovic's presentence report a part of the record on appeal from the denial of the Rule 35 motion.

**5.** *United States v. Kovic,* 740 F.2d 971 (7th Cir. 1984).

**6.** Kovic's § 2255 petition contained eight assertions, some of which were redundant. His petition did, however, raise the following additional issues which he no longer pursues on this appeal:

(1) that the district court, prior to sentencing, did not afford Kovic and/or his counsel an opportunity to comment as to the accuracy of the presentence report violating Rule 32(c)(3) and his due process rights;

(2) that Kovic was denied his right to allocution violating his due process rights.

his procedural defaults and actual prejudice resulting from the errors of which he complained, the district court denied Kovic's petition.[7] On appeal, Kovic asserts the above said errors and also contends that the district court abused its discretion when it (1) failed to provide an evidentiary hearing pursuant to § 2255, and (2) denied his § 2255 motion.

## II

The Government has argued and Kovic does not dispute that the *Frady* cause and actual prejudice standard is applicable to Kovic's § 2255 assertions. In *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982), the Supreme Court held that a federal prisoner seeking collateral relief pursuant to § 2255, "based on trial errors to which no contemporaneous objection was made, ... must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." The Supreme Court noted two overriding reasons for the adoption of the cause and actual prejudice standard under these circumstances. Initially, the Court observed that the federal government has a significant interest in the finality of its criminal judgments. The Court stated that "[o]ur trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post-conviction collateral attacks. To the contrary, a final judgment commands respect." *Id.* at 164–65, 102 S.Ct. at 1592–93. Furthermore, we have noted that "the grant of a habeas writ is intended to be the exception, not the rule." *Sanchez v. Miller*, 792 F.2d 694, 698 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987). The second important reason the Court alluded to is that

federal prisoners, unlike their state counterparts, have previously presented their federal claims in our federal trial and appellate courts. *Frady*, 456 U.S. at 166, 102 S.Ct at 1593.

We adopted the *Frady* cause and actual prejudice standard in *Norris v. United States*, 687 F.2d 899 (7th Cir.1982). In *Norris* we held that a federal prisoner's failure to raise a constitutional issue [8] on direct appeal bars raising it in a subsequent § 2255 motion unless the defendant can show cause for and actual prejudice resulting from the error of which he complained. *Id.* at 904. We noted:

"To take an appeal, and as it were reserve several issues for a second appeal to be taken from the denial of a § 2255 motion after the first appeal is decided ... is to engage in piecemeal litigation in as blatant a form as can be imagined. In some cases, there may be a good reason for this weird procedure—such as incompetence of counsel in the first appeal, newly discovered evidence, or an intervening change in the law—and if so the appellant will be able to demonstrate good cause for his failure to appeal the first time and will therefore be allowed to appeal a second time."

*Id.* at 903. We stated that there is a presumption against piecemeal litigation and it is the movant's burden to overcome the presumption by establishing cause for the procedural default and any actual prejudice resulting therefrom. *Id.* at 903–04.

In *United States v. Griffin*, 765 F.2d 677 (7th Cir.1985), we reaffirmed the validity of *Norris*. In *Griffin* we held that a federal prisoner who failed to raise his multiplicity argument at trial and on direct appeal must show cause for and actual prejudice resulting from the error of which he complained before we would excuse his double proce-

---

**7.** The court's order denying Kovic's § 2255 petition concluded that there was no cause or actual prejudice excusing Kovic's procedural defaults. The court initially decided that Kovic's claims were without merit. We agree with the decision of the trial court on a different basis; thus, we affirm. *See Rizzo v. United States*, 821 F.2d 1271, 1272 (7th Cir.1987); *see also Pfeil v. Rogers*, 757 F.2d 850, 866 (7th Cir.1985).

**8.** Non-constitutional errors are not properly raised in a § 2255 motion because they could have been, but were not, raised on direct appeal. *Norris v. United States*, 687 F.2d 899, 900 (7th Cir.1982); *See also United States v. Griffin*, 765 F.2d 677, 680 (7th Cir.1985).

dural default. *Id.* at 682. We noted that "the rule propounded in *Norris* is that when a federal criminal defendant fails to argue an issue on direct appeal of his conviction, the failure to bring the issue on direct appeal bars raising that issue in a § 2255 motion unless good cause for not appealing is shown." *Id.* at 680. Furthermore, "[w]hen the cause and prejudice standard is applied, the defendant must satisfy both the cause and prejudice elements." *Id.* at 682; *Frady,* 456 U.S. at 168, 102 S.Ct. at 1594.

In *Williams v. United States,* 805 F.2d 1301, 1306–07 (7th Cir.1986), we extended the applicability of the *Norris* cause and prejudice standard to new issues raised by defendants when attacking their sentences in a § 2255 proceeding. We noted that a defendant can attack his sentence in a Rule 35 motion and is free to appeal any adverse ruling on the Rule 35 motion by the district court. *Id.* at 1306. It is now the well established rule of this circuit that a federal prisoner seeking § 2255 review of issues which could have and should have been raised at trial and on direct appeal, in a Rule 35 motion, or on appeal of the Rule 35 motion, must establish cause for and actual prejudice resulting from the failure to previously raise the constitutional issue.

The Government argues that each of Kovic's § 2255 assertions are being raised for the first time and are thus subject to the *Norris* standard. Kovic asserts that his previous counsel provided ineffective assistance of counsel in that they failed to raise or preserve his constitutional claims; and that the ineffective assistance of counsel constitutes cause for Kovic's procedural defaults.[9] Kovic contends that actual prejudice has resulted from his counsel's failure to timely raise the issues he now presents in his § 2255 motion; we address each issue separately.

## A.

■ While seeming to cast aside the fact that he was the "kingpin" of a massive fraud on the citizens of Chicago, Kovic asserts that the sentencing court relied on erroneous and false information found in his presentence report as the basis for his 20–year concurrent sentences which were imposed on May 7, 1981. Specifically, he asserts that two erroneous statements are contained in his presentence report: (1) he was arrested in 1948 for robbery, and (2) he was unemployed at the time of sentencing. Kovic contends that the district court's reliance on these inaccurate statements in imposing his sentence violated his due process rights. The Supreme Court has held that convicted defendants have a due process right to be sentenced on the basis of accurate and reliable information. *See, e.g., United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). We too have had the opportunity to reaffirm the importance of the constitutional right to a fair sentencing procedure. *See, e.g., United States ex rel. Welch v. Lane,* 738 F.2d 863 (7th Cir.1984); *United States v. Harris,* 558 F.2d 366 (7th Cir. 1977). Because Kovic's arguments raise the possibility of a violation of his due process rights, he is required to establish cause for and actual prejudice resulting from his failure to raise this issue prior to his § 2255 motion. As we noted in *Griffin,* the *Norris* standard requires that Kovic establish both cause for and actual prejudice resulting from his failure to raise the issues prior to his § 2255 petition. *See also United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). We find it unnecessary to determine whether Kovic can in fact establish cause for his procedural defaults because from our review of the record we are confident he suffered no actual prejudice resulting from the inconsequential inaccurate

---

**9.** We have noted that ineffective assistance of counsel may provide sufficient cause for a procedural default. *See Clay v. Director of Juvenile Div., Dep't of Corrections,* 749 F.2d 427, 430 (7th Cir.1984); *Norris v. United States,* 687 F.2d 899, 903 (7th Cir.1982); *Johnson v. United States,* 805 F.2d 1284, 1291 (7th Cir.1986). Furthermore,

the Supreme Court stressed that only when counsel's performance is constitutionally ineffective under the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), standard will cause for a procedural default be found. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986).

statements contained in his presentence report.

The Supreme Court has refrained from giving "precise content" to the term "prejudice." Instead, the Court chose to let the facts presented in its future cases provide the "content" of the term "prejudice." *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Subsequently, in *Frady* the Court had an opportunity to address the degree of prejudice a federal prisoner must establish before he could obtain collateral relief. There, the procedural default occurred when the defendant failed to timely object to a jury instruction at trial. The court stressed that before the prisoner could satisfy the prejudice element of the *Frady* test, he must establish that " 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Frady,* 456 U.S. at 169, 102 S.Ct. at 1595 (quoting *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973))). The Court stated that:

> "[*Frady*] must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

*Id.* at 170, 102 S.Ct. at 1596. The Court concluded noting that it perceived "no risk of a fundamental miscarriage of justice." *Id.* at 172, 102 S.Ct. at 1596. Therefore, we conclude that Kovic must demonstrate that the existence of the two alleged inaccurate statements in his presentence report[10] so infected his sentencing hearing that it resulted in a fundamental miscarriage of justice.

■ A convicted defendant has a due process right to be sentenced on the basis of accurate information. *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *See also Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). We noted that:

> "Under *Townsend* and *Tucker,* a sentence must be set aside where the defendant can show that false information was part of the basis for the sentence. The two elements of that showing are, first, that information before the sentencing court was inaccurate, and second, that the sentencing court relied on the misinformation in passing sentence."

*United States ex rel. Welch v. Lane,* 738 F.2d 863, 865 (7th Cir.1984); *see also United States v. Harris,* 558 F.2d 366, 373 (7th Cir.1977) (wherein we stated: *"Tucker* and *Townsend* have been read broadly to preclude reliance upon 'improper or inaccurate information' in making the sentencing determination."). Thus, "in order to show a due process violation, [Kovic] must raise grave doubt as to the veracity of the information [contained in his presentence report] and show that the court relied on that false information in determining the sentence." *United States v. Eschweiler,* 782 F.2d 1385, 1387 (7th Cir.1986). Only then can Kovic assert that a fundamental miscarriage of justice occurred at his sentencing hearing.[11]

■ Kovic argues that Judge Getzendanner's findings in the September 18, 1986 Memorandum and Order establish that his presentence report contained two inaccu-

---

**10.** Kovic initially asserted that the sentencing court relied on letters found in his file which in fact did not exist. Additionally, Kovic contended that the district court had relied on information contained in other presentence reports. Judge Getzendanner clearly refuted these allegations in her Memorandum Opinion and Order denying the § 2255 motion. Kovic does not raise these arguments on appeal; instead he argues that the sentencing court impermissibly relied on two inaccurate statements in imposing his sentence: (1) that he was arrested for robbery in 1948, and (2) that he was unemployed at the time of sentencing.

**11.** Kovic additionally asserts that a violation of Fed.R.Crim.P. 32 occurred when Judge Getzendanner "relied" on false information in his presentence report. We note, however, that Kovic cannot complain of a rule violation as such, under § 2255, but only of a violation of his due process rights. *See Johnson v. United States,* 805 F.2d 1284, 1287 (7th Cir.1986). Thus, we limit our review to Kovic's due process claim.

rate statements. Judge Getzendanner noted:

> "There were two erroneous statements contained in the presentence report. The correct facts are that the defendant was not arrested in 1948 for robbery and he was employed at the time of sentencing."

After reviewing the record, we agree with Judge Getzendanner that the presentence report contained inaccurate information regarding a 1948 robbery arrest. However, we cannot agree with her finding that the presentence report included erroneous employment information. Our examination of Kovic's presentence report reveals that the report was completed by a U.S. Probation officer on April 20, 1981, in preparation for Kovic's May 7, 1981 sentencing hearing. The following employment information is found in the report completed April 20, 1981:

> "Since November 18, 1980, the defendant has been unemployed. Mr. Kovic advised that he is supported by his personal savings."

On May 3, 1981, thirteen days after the report had been completed and only four days before his sentencing hearing, Kovic obtained employment. Under these circumstances we hold that the presentence report was not inaccurate because neither courts nor defendants can reasonably expect that a presentence report can be prepared, dictated, typed and presented to the court contemporaneous with the sentencing hearing. Rather, it is incumbent upon counsel to examine and review the report with their clients and notify the court at the sentencing hearing of the defendant's changed circumstances, if any. Any inaccurate employment information included in Kovic's presentence report as of May 7, 1981, the date of the sentencing, is there because of the defendant's and/or his counsel's failure to object; and not due to the fault of the trial court[12] or the U.S. Probation Department.

We are aware that Kovic contends that he reviewed the presentence report for the first time in March 1985, at which time he became aware of the "inaccuracies" in the report. Kovic asserts that his failure to timely object to the "inaccuracies" was a result of ineffective assistance of counsel. Kovic argues that but for the ineffective assistance of counsel the presentence report would not contain the "inaccurate" information. Therefore, we proceed, assuming arguendo, that Judge Getzendanner correctly found that Kovic's presentence report contained two inaccurate statements: (1) a 1948 robbery arrest, and (2) he was unemployed when sentenced.

Kovic, however, completely and utterly fails to prove that Judge Getzendanner relied on the alleged inaccuracies. As we

---

**12.** We noted that Kovic's § 2255 petition alleged that the trial court, prior to sentencing, did not afford Kovic and/or his counsel an opportunity to comment as to the accuracy of the presentence report but that Kovic no longer pursues this issue on appeal. *Supra,* note 6. The sentencing transcript disclosed that Judge Getzendanner posed the following question to defense counsel:

> "First let me inquire of defense counsel whether you have each had an opportunity to review the presentence report with respect to your client? Has anybody not had that opportunity? All right."

Inasmuch as defendant's counsel knowingly chose not to verbally respond to the court's inquiry, his failure to respond, as much as any direct response, convinces us that counsel had an opportunity to review the presentence investigation report.

We note only that the record discloses that Kovic's initial assertion that the judge failed to comply with Rule 32(c)(3) was based on a partial transcript of the May 7, 1981 sentencing hearing. The record includes two transcripts of the May 7, 1981 hearing, one complete transcript and a partial transcript. It appears that the complete sentencing transcript was prepared in 1982 presumably at the time of Kovic's direct appeal of his conviction. The partial transcript was prepared in 1983, presumably in connection with the appeal from the court's denial of the Rule 35 motion. The partial transcript did not contain the above-quoted dialogue which had transpired between the convicted defendants, their counsel, and Judge Getzendanner. This court, as well as the district court, had every right to expect and does expect the highest degree of professional conduct from each and every attorney appearing before it. Reliance on a partial transcript under these circumstances manifests either incompetence, carelessness or an attempt to mislead the court, any one of which falls far short of acceptable professional conduct. We, of course, made the effort to retrieve and thus rely upon only the complete transcript of the May 7, 1981 sentencing hearing for our factual analysis.

will demonstrate, Kovic failed to establish that "it is 'not improbable that the trial judge was influenced by improper factors in imposing sentence.'" *Rizzo v. United States*, 821 F.2d 1271, 1274 (7th Cir.1987) (quoting *United States v. Harris*, 558 F.2d 366, 374–75 (7th Cir.1977)).

We begin our analysis of whether Judge Getzendanner relied on inaccurate information in the presentence report in imposing Kovic's sentence with her September 18, 1986 Memorandum Opinion and Order denying Kovic's § 2255 motion. She remarked:

"There were two erroneous statements contained in the presentence report. The correct facts are that the defendant was not arrested in 1948 for robbery and he was employed at the time of sentencing. The court did not take an arrest in 1948 into account in determining the defendant's sentence. The court does not rely on arrests, only actual convictions or in some cases formal indictments. The defendant's lack of employment also was not taken into account. The defendant was caring for an ill, aged parent, and this fact adequately would have explained the defendant's unemployment. In sum, the court was not influenced by the erroneous information."

Kovic argues that this statement of the presiding judge is unreliable because it was made some five years after the date of sentencing. He baldly makes this assertion without any support in the record. Furthermore, Kovic argues that because the report reflected that he was unemployed at the time of sentencing, the court failed to consider his actual employment as a mitigating factor in imposing sentence.

Kovic directs our attention to *United States v. Espinoza*, 481 F.2d 553 (5th Cir. 1973), to support his argument. In *Espinoza*, the sentencing court stated:

"One of the defendants has been in trouble before, but they are all a part of what seems to be a very serious problem, and whether they have ever actually been convicted or not, Mr. Espinoza, your record is bad, your record for threats and assaults."

*Id.* at 554. This statement followed defense counsel's denial that the defendant had ever been convicted of a felony. Espinoza filed a petition for reduction of sentence pursuant to Rule 35 requesting an opportunity to present evidence to rebut the court's statement that the defendant's record was bad. The court denied the motion without allowing the defendant to rebut the contested information. On appeal, the Fifth Circuit noted that:

"From the record in this case, it is readily apparent that the court below relied, at least in part, on appellant's 'bad record' when assessing appellant a longer sentence than his co-defendants, both of whom were charged with considerably more than appellant."

*Id.* at 555. The court concluded that the district court had erred because it failed to allow the defendant to present rebuttal information. In reaching this conclusion, the court noted:

"Had the court below stated reasons for denial of the [Rule 35] motion or, in the alternative, disclosed in some greater detail the basis for imposing the rather long sentence, the posture of this appeal might well be different. Rather, we are faced with a disturbing record that discloses only that defendant was given a lengthy sentence on the basis of possibly erroneous information and that the district court, without stating reasons, refused to permit rebuttal of the factual assumption."

*Id.* at 557–58.

The holding in *Espinoza* is of no assistance to Kovic's cause. After scrutinizing the record, we have not found a scintilla of evidence other than Kovic's unsupported speculation, that would support the defendant's allegation that Judge Getzendanner relied on a 1948 arrest in imposing Kovic's sentence. We note that at the sentencing hearing the Government urged the court to impose a very substantial sentence on Kovic because he was the *"mastermind"* of the brazen phony billing scheme that cost the citizens of Chicago over $600,000 and because of his deliberate and calculated violation of the public trust. The Govern-

ment noted, and we agree, that substantial sentences and fines will do more than anything we know to discourage and deter public corruption. Judge Getzendanner, after hearing from defense counsel, commented for the record as follows:

"Mr. Kovic, I am not going to make a speech. I find the crime of which you are convicted before me to be a very serious crime against the public. I am taking into account the recommendations of the other judges on the sentencing council. I have taken into account the probation department's recommendations, the Government's recommendation, your counsel's argument on your behalf, and I sentence you to a period of 20 years and a maximum fine of $27,000.

It should be noted that Judge Getzendanner did not specifically mention the inaccurate information concerning a 1948 arrest for robbery but does refer to Kovic's "serious crime against the public" during her remarks at sentencing. Nor did she comment on the defendant's unemployment. Subsequently, at Kovic's Rule 35 motion, Judge Getzendanner reaffirmed that Kovic's sentence was carefully considered when imposed. She explained that she imposed a lengthy sentence because of the extent of Kovic's corruption and her belief that similar activity can be deterred by substantial sentences. Kovic's reliance on *Espinoza* is nothing more than a strawman argument because the facts before us are clearly distinguishable from *Espinoza.* Here it is most evident that Judge Getzendanner did not rely on Kovic's "bad record" as she stated, as contrasted to the judge in *Espinoza.* Furthermore, she specifically delineated her reasoning when imposing the sentence, i.e., to punish and deter public corruption.

We have held that a district court may dismiss a § 2255 motion if he or she recollects that at the time of sentencing he or she did not rely on the void conviction. *See Lawary v. United States,* 599 F.2d 218 (7th Cir.1979); *see also United States v. Hubbard,* 618 F.2d 422 (7th Cir.1979). This rule is even more applicable here, where Judge Getzendanner stated with specificity

when denying the defendant's § 2255 motion that at the sentencing on May 7, 1981, she did not rely on the inaccurate arrest information contained in the presentence report. *See, e.g., Johnson v. United States,* 805 F.2d 1284, 1289 (7th Cir.1986). In *Johnson,* the defendant's presentence investigation report contained, *inter alia,* a listing of prior arrests and a charge not on his record. The judge one year later at a § 2255 hearing, denied that he relied on any of the alleged misinformation. We noted that where there was no factual basis for the defendant's claim that the judge relied on false information "[w]e have no basis for discrediting his unequivocal report of his recollections, which persuade us that he did not in fact rely on inaccurate information in sentencing Johnson." *Id.* at 1289. Similarly, Judge Getzendanner emphatically denied reliance on any of the inaccurate information referred to. In her Memorandum Opinion and Order denying Kovic's § 2255 motion she specifically and unequivocally stated:

"The court did not take an arrest in 1948 into account in determining the defendant's sentence. The court does not rely on arrests, only actual convictions or in some cases formal indictments. The defendant's lack of employment also was not taken into account. The defendant was caring for an ill, aged parent, and this fact adequately would have explained the defendant's unemployment. In sum, the court was not influenced by the erroneous information."

Judge Getzendanner is a responsible and respected federal judge aware of her obligations and oath of office, and furthermore, is sensitive to the rights of all individuals. There is nothing in this record, absent Kovic's bald unsupported speculation, to discredit her specific recollection of the sentencing hearing.

In concluding, we note that the facts before us are distinguishable from those in *Rizzo v. United States,* 821 F.2d 1271 (7th Cir.1987). In *Rizzo,* the presentence report noted the defendant's previous record of

juvenile delinquency adjudications.[13] However, the defendant had not been represented by counsel in the juvenile delinquency proceedings—a violation of his sixth amendment right to counsel. In sentencing the defendant, the court commented: "Mr. Rizzo, your conduct and your *record* commends you for nothing." *Id.*, at 1272 (emphasis added). Because the court expressly noted the defendant's "record" we held that the judge may have impermissibly relied on the uncounselled juvenile adjudications included in the presentence report when imposing sentence. *Id.* As noted above, the record demonstrates that Judge Getzendanner emphatically stated that she did not rely on the inaccurate information set forth in Kovic's presentence investigation report.

We hold that Kovic's due process rights were not violated because the district court did not rely on the inaccurate statements in his presentence report when imposing sentence. Kovic has failed to demonstrate that he suffered actual prejudice as a result of the errors in his presentence report and is not entitled to collateral relief.

**13.** We have noted that district courts are allowed to consider the defendant's juvenile record, *see United States v. Madison*, 689 F.2d 1300, 1315 (7th Cir.1982), as well as the defendant's criminal record in general, *see, e.g., United States v. Hoffman*, 806 F.2d 703, 714 (7th Cir. 1986), when imposing sentence.

**14.** Kovic also argues that if he would have cooperated by identifying the man downtown, he would in fact have been electing to forego his post-conviction remedies. At the sentencing hearing, Kovic maintained that he was innocent so he may have, by identifying the "man downtown", waived certain issues on appeal, because implicit in identifying the man downtown is his own involvement in the scheme and an admission of guilt to some if not all of the counts for which he was indicted.

**15.** As we have noted in footnote 12, Kovic's § 2255 motion relied on a partial transcript of the sentencing hearing for factual support. Kovic based, in part, his present assertion that he was coerced by Judge Getzendanner to cooperate with the Government on statements found in the partial transcript. That partial transcript reads as follows:

The Court: Does Mr. Kovic wish to address the court?

## B.

Kovic also asserts that his constitutional rights were violated because the court attempted to coerce him into cooperating with the Government to provide the identity of the "man downtown." Kovic claims he faced a classic "Hobson's choice"—he could be uncooperative by remaining silent and lose the opportunity to receiveleniency or he could cooperate by identifying the "man downtown" and face the risk of additional prosecution.[14] Once more speculating, without a scintilla of support in the record, Kovic contends that in remaining silent, thus preserving his Fifth Amendment rights, he received a longer sentence. Kovic contends that a price tag was impermissibly placed on his constitutional rights. We find Kovic's argument, seemingly ingenious, to be without substance and of no benefit to his cause.[15]

The Government and Kovic state that this issue was initially raised in the § 2255 petition and subject to the *Norris* standard. Kovic argues cause for his procedural defaults exists because his prior counsel were ineffective in either failing to preserve the error at the sentencing hearing or raising it

Mr. Kovic: No, your Honor.
The Court: Do you wish to reply to what he said?
Mr. Kovic: No, your Honor, I think the Court has heard the evidence.

From this Kovic argued in his § 2255 motion that: "The court *inquired directly from the petitioner* whether he wished to respond to the governments [sic] attorneys' [sic] dialogue that had described to the court the governments [sic] non-productive efforts to have the petitioner cooperate." (Emphasis added).

However, the full transcript of the sentencing hearing reads as follows:

The Court: Does Mr. Kovic wish to address the Court?
Mr. Kovic: No.
Mr. Schipper: No, your Honor.
Mr. Tarum: Do you wish us to—
(Representing the Government)
The Court: Do you wish to reply?

Judge Getzendanner did not at any time pressure Kovic to respond to the Government's sentencing remarks. Counsel once again, either incompetently or carelessly, relied on the partial transcript and confused the issues before the court. Now apparently relying on the complete transcript, he continues to assert, almost frivolously, that Judge Getzendanner's conduct violated Kovic's constitutional rights.

subsequently. But our review of the record discloses that the issue of the constitutionality of Kovic's sentence has been previously raised by Kovic at the Rule 35 motion hearing of June 15, 1983.

The following dialogue took place between David Lubell, Kovic's counsel at the time, and Judge Getzendanner.

> MR. LUBELL: [Kovic] admits his guilt, he should be punished for his guilt but he can't be punished I would respectfully submit—or let me rephrase that, and only Your Honor can answer it. And the question I would put is this, most respectfully: If one day—never mind an extra eight years—if but one day of the sentence that this court imposed was imposed because of the fact that the defendant did not cooperate, you may want to consider whether that is constitutional or not. Because in point of fact—
>
> THE COURT: Oh it is not even an issue. I said at the time that it wasn't an issue, I have said it a thousand times since then in other cases.
>
> My sentencing philosophy, which was formed quite early, is that the failure to cooperate should not be taken into account; cooperation should be taken into account in a very positive way, and I do that. I have reduced sentences in this case for defendants who have cooperated, and I realize that that tends to benefit people who are possibly more guilty than other people, people who have something that they can cooperate with respect to, but you can't eliminate that unevenness.
>
> So, sentences have been reduced in this case based on affirmative cooperation.
>
> MR. LUBELL: Well, of course I was asking the question from the opposite perspective, and your Honor has already answered that not one extra day was imposed upon this defendant by reason of his failure to cooperate, whether he could or not, because we both agree then that not until the last glimmer has been extinguished of reasonable doubt, of course, could he be punished under our law for anything other than the crimes that he was convicted of. But—
>
> THE COURT: It is really not an issue.
>
> MR. LUBELL: I beg your pardon?
>
> THE COURT: I say it is really not an issue.
>
> MR. LUBELL: Not an issue.

Counsel clearly raised the issue of whether Kovic's constitutional rights had been violated by his failure to cooperate. Furthermore, counsel clearly challenged the court as to whether Kovic's sentence was lengthened because of his failure to cooperate. While Lubell's argument was not phrased in the same vein as Kovic now raises the issue, there is no doubt that he is raising the same issue.

■ David Lubell did not raise the issue on his appeal from the Rule 35 motion. We have noted that there is a well recognized rule that a § 2255 motion may not be used as a substitute for a direct appeal. *See Levine v. United States*, 430 F.2d 641, 643 (7th Cir.1970); *see also Norris v. United States*, 687 F.2d 899 (7th Cir.1982). We have also noted that "[i]n the absence of changed circumstances we will not reconsider in an appeal from the denial of a section 2255 motion an issue previously decided by us on direct appeal from the conviction." *Norris*, 687 F.2d at 900. Consistent with our precedent we hold that absent changed circumstances an issue heard on a Rule 35 motion but not directly appealed cannot be raised in a subsequent § 2255 motion. Kovic has failed to establish changed circumstances and is not entitled to collateral relief.

■ Even if we were to consider this issue, assuming, of course, that Kovic had or could have established cause for the procedural defaults, we would affirm Judge Getzendanner. The record conclusively demonstrates that Kovic's sentence was imposed because at the time of sentencing he was the unrepentant "kingpin" of a massive fraud on the public, the citizens of Chicago, and had flagrantly violated his position of public trust. At the May 7, 1981 sentencing hearing, Judge Getzendanner remarked:

"Mr. Kovic, I am not going to make a speech. I find the crime of which you are convicted before me to be a very serious crime against the public."

Additionally, at Kovic's June 15, 1983 Rule 35 motion, Judge Getzendanner stated:

"The 20–year sentence was very carefully considered. I have received a lot of comments about that sentence from a lot of different kinds of people.

Obviously Mr. Kovic's friends who have written me letters consider it a very harsh sentence. I suspect that they have no idea as to how much money was involved, how many years were involved, the extent of Mr. Kovic's corruption, the corruption of the entire department; not only the money he took, but the money that everybody below him took is all attributable to him. It would not have occurred unless the boss was on the take also. Affirmative theft from the taxpayers of the City over a long period of time.

It is a very serious crime. If more judges imposed 20–year sentences there would be less of this kind of activity, and I think 20–year sentences are going to become more common in those kinds of cases....

This is the kind of activity that can be deterred by high sentences."

Furthermore, while our review of the record revealed that Judge Getzendanner inquired of the Government as to the defendant's cooperation with the "man downtown," the record is clear that Kovic's sentence was not imposed because he failed to cooperate. Judge Getzendanner clearly articulated her sentencing philosophy at the June 15, 1983 hearing:

"My sentencing philosophy, which was formed quite early, is that the failure to cooperate should not be taken into account, cooperation should be taken into account in a very positive way, and I do that. I have reduced sentences in this case for defendants who have cooperated, and I realize that that tends to benefit people who are possibly more guilty than other people, people who have something that they can cooperate with respect to, but you can't eliminate that unevenness." [16]

Kovic was not punished for not cooperating nor was he asked to bargain away his constitutional rights to obtain leniency. As the mastermind of a substantial fraud he received a proportionately substantial sentence.

Furthermore, *Thomas v. United States*, 368 F.2d 941 (5th Cir.1966), on which Kovic relies, is clearly distinguishable. In *Thomas*, the Fifth Circuit held that the sentencing court impermissibly threatened the defendant when it stated:

"If you will come clean and make a clean breast of this thing for once and for all, the court will take that into account in the length of sentence to be imposed. If you persist, however, in your denial, as you did a moment ago, that you participated in this robbery, the court also must take that into account. Now which will it be?"

*Id.* at 946. Judge Getzendanner did not at any time promise to reduce Kovic's sentence if he identified the "man downtown" nor did she threaten him if he chose to remain silent. There is no support in the record for Kovic's claim; it is clearly without merit.

### III

Kovic's remaining claims are also without merit. Initially, Kovic asserts that his prior counsel provided ineffective assistance of counsel. While Kovic provides an endless list of alleged deficiencies, essentially what his claim boils down to is that his prior counsel failed to raise and preserve the issues already discussed above. Because we have held that Kovic suffered

16. This statement is consistent with Judge Getzendanner's remarks made at the May 7, 1981 sentencing hearing. There she stated with respect to Mr. Cavale, Kovic's co-defendant, that:

"It clearly is a puzzle as to how the Court can put one co-owner [Mr. Nawrocki] on two years' probation and give a period of incarceration to another co-owner, [Mr. Cavale,] but it is *not punitive* with respect to Mr. Cavale, it is really to *credit Mr. Nawrocki's cooperation* with the government."

Clearly, Judge Getzendanner did not punish any of the defendants for not cooperating with the Government.

no actual prejudice from failing to previously raise the issues he cannot now suffer prejudice from his prior counsel's alleged deficiencies with respect to the same said errors. *See Johnson v. United States,* 805 F.2d 1284, 1290 (7th Cir.1986).

Next, Kovic contends that even if we hold, as we do, that Judge Getzendanner did not rely on the inaccurate information, she still abused her discretion in imposing the 20–year sentence. On appeal from the Rule 35 motion, we held that: "There is no basis upon which we can say that the district court abused its discretion in denying the Rule 35 motion." [17] We will not now reconsider our previous holding.

Finally, Kovic asserts that the district court abused its discretion because it failed to order an evidentiary hearing pursuant to § 2255. The standard for determining when a § 2255 motion can be denied without an evidentiary hearing is whether the record conclusively demonstrates that a defendant is entitled to no relief. *See United States v. Robinson,* 585 F.2d 274, 280 (7th Cir.1978), *cert. denied,* 441 U.S. 947, 99 S.Ct. 2171, 60 L.Ed.2d 1051 (1979). Because we hold the record before us conclusively demonstrates that Kovic is entitled to no relief, we find no basis for holding that the district court abused its discretion.

Kovic insists that because the two inaccurate statements remain in his presentence report he may suffer prejudice in the future by being denied an early parole. We recently stated that "Section 2255 provides the procedure for challenging federal convictions and sentences; if a prisoner wants 'out' for some other reason his remedy [after exhausting his administrative remedies], is habeas corpus." *United States v. Mittelsteadt,* 790 F.2d 39, 40–1 (7th Cir.1986). But we feel obligated to point out to Kovic's counsel that he is free to informally bring the matter to the attention of the parole authorities, and we are convinced that the Parole Commission, if asked to do so, would honor Judge Getzendanner's findings of fact.

In reaching our decision affirming the district court, we are mindful of the need for finality of criminal convictions. This case has been dragged out over six years while the "mastermind" of this extensive fraud on the citizens of Chicago appealed his conviction, challenged his sentence pursuant to Rule 35, appealed from the denial of the Rule 35 motion, then sought collateral relief pursuant to § 2255, and now, once again before this court, he contests his sentence on what can be at best characterized as purely trifling and speculative assertions of alleged errors by the trial court and his prior counsel. All too often, as we are seeing in this case, the defense counsel takes a buckshot approach hoping a pellet will strike—but instead, our overburdened judicial system has been put through yet another needlessly repetitious and wasteful collateral attack. Some place, somewhere, somehow, we must put an end to this repetitious and meritless litigation if we are to be able to attempt to render justice in a timely fashion to those with meritorious claims.

WE AFFIRM.

RIPPLE, Circuit Judge. I concur in the result.

---

**17.** *United States v. Kovic,* No 83–2296, unpublished order at 6 (7th Cir. July 23, 1984) [740

F.2d 971 (table) ].