Charles POOR THUNDER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 85–5382.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1986.

Decided Feb. 6, 1987.

David Skeen, Port Townsend, Wash., for appellant.

Jerome C. Kettleson, Asst. U.S. Atty., Bismarck, N.D., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and NICHOL,* Senior District Judge.

ARNOLD, Circuit Judge.

In 1983 Fed.R.Crim.P. 32 was amended to require the district courts to give a defendant a chance to examine the presentence investigation report, to listen to any objections the defendant might have to the report, and to make findings as to any controverted matters, or to determine that no such findings are necessary because the matters controverted will not be taken into account in sentencing. Fed.R.Crim.P. 32(c)(3)(D). The amended Rule further requires that a written record of the sentencing court's findings and determinations shall accompany any copy of the report made available to the Bureau of Prisons or the United States Parole Commission. This appeal requires us to consider for the first time in some detail the extent to which violations of this portion of Rule 32 may be

---

* The Hon. Fred J. Nichol, Senior United States District Judge for the District of South Dakota, sitting by designation.

raised in a collateral attack on a conviction under 28 U.S.C. § 2255, and also to explain several aspects of the meaning and practical application of the Rule.

### I.

■ Charles Poor Thunder, the appellant in this case, was charged by information with two federal offenses: involuntary manslaughter in violation of 18 U.S.C. §§ 1153 and 1112(a), and transportation of a firearm by a convicted felon in interstate commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924(a). He pleaded guilty. On March 8, 1984, after the effective date of amended Rule 32(c)(3)(D) (August 1, 1983), the District Court sentenced Poor Thunder to three years on the manslaughter count and four years on the firearms count, the terms to be consecutive. At the sentencing hearing the defendant, who had duly been given a chance to examine the presentence report, called the Court's attention to no less than ten [1] claimed errors of fact in the report. The Court's action with respect to these claims of error will be described in detail below.

Defendant did not file a direct appeal. He went on to prison. Shortly after arriving there he discovered that his presentence report had been sent to the Bureau of Prisons and the United States Parole Commission unchanged. The portions of the report to which he had objected were intact. Indeed, there was no indication, so far as the prison and parole authorities could tell, that defendant had questioned any part of the report. No written findings or determinations by the sentencing court were appended to or accompanied the report.[2] On July 6, 1984, defendant filed a motion for reduction or correction of sentence under Fed.R.Crim.P. 35, claiming, among other things, violations of Rule 32 and of the Due Process Clause of the Fifth Amendment. The District Court had previously directed that a copy of a detailed letter from defendant (written after his arrival at the Penitentiary), expounding at length on his objections to the presentence report, be affixed to the report and sent to the Penitentiary in Terre Haute, Indiana, where Poor Thunder was being held. But it denied his Rule 35 motion on September 20, 1984. The order states simply that "[t]his Court has reviewed the sentence imposed and finds no reason to modify it." *United States v. Poor Thunder*, Cr. No. C1–83–38–01 (D.N.D. Sept. 20, 1984). No appeal was taken from this order.

Over a year later, on October 21, 1985, Poor Thunder filed this proceeding to va-

---

**1.** The District Court, apparently following its usual procedure in such matters, first met in chambers with counsel and the defendant. At that time defendant and his lawyer, off the record, went over the report with the Court and offered certain enlargements and corrections. The Court, counsel, and defendant then went into open court, where the Court stated, on the record, the various corrections that the defense had offered, together with the Court's action thereon. The Court mentioned ten separate corrections requested, and we will describe them in detail later in this opinion.

Defendant claims (Brief for Appellant *pro se* 7) that two other objections he made in chambers were not mentioned by the Court when it went on the record. We can grant no relief with respect to these two alleged off-the-record objections. If, when the District Court went on the record to summarize what had been said in chambers, the Court's statement was incomplete, it was up to defendant or his lawyer to say so at the time. Whatever omissions, if any, were made were, we are sure, completely inadvertent, and the District Court's attention should have been called to them in a timely fashion. There is no way that statements made in an off-the-record conference can be reliably reconstructed at this point.

This course of proceedings convincingly illustrates the inadvisability of off-the-record conferences on important matters of substance or procedure. This is especially true in the context of Rule 32(c)(3)(D), which requires that a written record of findings and determinations shall be appended to and accompany the presentence report. It is essential that all factual objections to the report be placed on the record, either in a transcription of proceedings before the court, or in writing, as, for example, in a letter or pleading. A summary of what has occurred the record, no matter how conscientiously made, will always be open to the kind of after-the-fact cavil that defendant has attempted here.

**2.** In fact, the sentencing proceedings were not transcribed until much later, when this Court, having appointed counsel for defendant, directed that a transcript be prepared at public expense.

cate or correct his sentence under 28 U.S.C. § 2255. He again alleged, among other things, violations of Rule 32 and of the Due Process Clause. According to defendant's Section 2255 motion, "[i]naccurate and erroneous information [was] contained in [the] presentence report" and "[n]o finding was made as to accuracy of controverted report or to determine that no reliance would be placed on disputed matters at time of sentencing...." Motion ¶ 11(a)(3), at p. 2.[3] On the same day the motion was filed, the District Court denied it without a hearing. The Court stated: "Defendant's ... version of the facts was presented to this court at the time of sentencing. This court concludes that it did not give undue weight to the government's version of the facts." *United States v. Poor Thunder*, Criminal No. C1–83–38, slip op. 2 (D.N.D. Oct. 21, 1985).

Poor Thunder then appealed to this Court. After appointing counsel[4] and hearing argument, we hold that, in the circumstances of this case, Poor Thunder's Rule 32 arguments are cognizable under 28 U.S.C. § 2255, and that the District Court fully complied with the rule, except that a copy of the sentencing transcript should have been appended to the report. The judgment of the District Court, refusing to set aside the sentence, will therefore be affirmed, and the cause remanded with directions to attach a copy of the sentencing transcript to each copy of the presentence report.

## II.

This proceeding is brought under 28 U.S.C. § 2255, the statutory analogue of habeas corpus for persons in federal custody. This statute provides a remedy in the sentencing court (as opposed to habeas corpus, which lies in the district of confinement) for claims that a sentence was "im-posed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." We have no doubt that the Federal Rules of Criminal Procedure are "laws of the United States," at least for some purposes, so if the statute were to be read and applied literally, nothing would be plainer than that the Rule 32 error alleged here is appropriately raised on collateral attack under Section 2255. But it is axiomatic that the statute is not to be read and applied literally: its effect is only to create a new venue for habeas corpus cases that previously had been crowded into districts containing federal penitentiaries. Like habeas itself, Section 2255 is not the equivalent of a direct appeal. There are many claims of error sufficiently grave and prejudicial to cause a reversal of a conviction on direct appeal, but yet not fundamental enough to support a collateral attack. It will not do to assume uncritically (as many appellate opinions seem to do) that a Section 2255 court may immediately go to the merits of any substantial federal question without first examining carefully whether the question is of the kind on which a collateral attack on a final judgment may properly be based. As the Seventh Circuit has recently helpfully explained,

> habeas corpus is not a proper route for complaining about simple trial errors. The policy of finality in criminal cases, attenuated though it is compared to the policy of finality in civil cases, retains some strength—enough to make the direct appeal ... the exclusive route for complaining about errors that demonstrate neither "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission

---

**3.** This motion is not part of the Designated Record (D.R.) before us on this appeal. It was furnished to the Clerk of this Court at our request after oral argument. The copy we have is certified by the Clerk of the District Court, so we do not hesitate to refer to it. We may request and rely on any materials on file with the District Court, whether or not they were designated by the parties as part of the D.R. See Comment to 8th Cir.R. 7.

**4.** We are grateful to appointed counsel for his effective service to his client and to this Court.

inconsistent with the rudimentary demands of fair procedure." *Johnson v. United States*, 805 F.2d 1284, 1287 (7th Cir.1986), quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

██ We know from *Davis v. United States*, 417 U.S. 333, 345, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974), that courts entertaining collateral attacks on convictions are not confined to "claims 'of constitutional dimension.'" (Indeed, we know that much from the words of Section 2255 themselves.) We also know that merely "technical" violations of the Rules of Criminal Procedure are not open under Section 2255, at least in the absence of "other aggravating circumstances," *United States v. Timmreck*, 441 U.S. 780, 784–85, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979). How does this present claim fit into this framework? Poor Thunder says the District Court sentenced him on the basis of information that he questioned, but that the Court never determined to be true. *Hill v. United States, supra,* held that violations of Rule 32(a) (the right of allocution) were not reachable on collateral attack, but that holding is not necessarily dispositive of a claim under Rule 32(c)(3)(D), which, though in one sense merely another aspect of sentencing procedure, addresses a quite different need—the need for factual accuracy in a key sentencing document.[5] The *Hill* Court made this very point clear when it observed that it had not been "suggested that in imposing the sentence the District Judge was either misinformed or uninformed as to any relevant circumstances." 368 U.S. at 429, 82 S.Ct. at 471.

██ The question in each case must be, not whether a violation of Rule 32 is alleged, but whether the kind of violation alleged demonstrates either "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States, supra,* 368 U.S. at 428, 82 S.Ct. at 471. Here we have, in our view, a claim that Poor Thunder did not get the rudiments of fair procedure. He was sentenced on the basis of a report that he says was inaccurate, he brought the inaccuracies to the attention of the sentencing judge at the proper time, and yet (he claims) the judge neither corrected the report, nor found as a fact that it was correct as written, nor disclaimed reliance on the disputed material. Rule 32(c)(3)(D) provides a procedure for handling just such matters, and Poor Thunder claims it was not followed. We do not hold that the Rule in its every detail is required by the Due Process Clause of the Constitution. But it is designed to safeguard the right, held to be contained in that Clause, see *Townsend v. Burke*, 334 U.S. 736, 740, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), that defendants be sentenced on the basis of materially accurate facts, or at any rate that they not be sentenced on the basis of any facts until a fair process for determining accuracy has been made available. We hold that this

---

5. To this extent, we disagree with *Johnson v. United States, supra,* which holds that no violation of Rule 32 is cognizable under Section 2255, unless the violation also amounts to a deprivation of liberty without due process. *Johnson,* a Rule 32(c)(3)(D) case, reads *Hill* as holding flatly that "a violation of Rule 32" cannot be corrected under Section 2255. 805 F.2d at 1287. We do not agree that all violations of Rule 32 are fungible. Moreover, Rule 32(c)(3)(D) was enacted more than 20 years after *Hill.*

This is not to say that we would have held the particular claim asserted in *Johnson* open on collateral attack. There, the presentence report was shown to defense counsel, but not to

Johnson himself. This was a violation of amended rule 32, but we do not think that giving a defendant the chance to examine the report through his agent only, as opposed to personally, takes away any of the rudiments of fair procedure. Further, in *Johnson* (unlike the present case), no alleged errors in the report were brought to the sentencing judge's attention at the time of sentencing. In this situation, we can appreciate and agree with the Seventh Circuit's holding that collateral relief was not available. It is only the broader-than-necessary statement that Rule 32 questions as a class are not cognizable under Section 2255, with which we disagree.

sort of Rule 32 claim is, in general, cognizable on collateral attack under Section 2255.[6]

We say "in general" because a question remains as to the availability of Section 2255 in this particular case. So far we have concluded only that this kind of Rule 32 claim is sufficiently basic to qualify for Section 2255 treatment. It remains to deal with the argument that Poor Thunder should not be allowed to raise it now because he could have, but did not, raise it on direct appeal from his sentence, or on appeal from the denial of his Rule 35 motion. We think neither of these procedural omissions is a bar in this case. There was no direct appeal from the conviction or sentence, but the very existence of Rule 35(a), specifically providing a post-judgment, collateral remedy for sentences imposed in an illegal manner, shows that direct appeal is not the exclusive avenue for this kind of complaint. That conclusion, to be sure, shows only that a Rule 35 remedy was available, and not that a Section 2255 proceeding should lie despite defendant's failure to pursue fully his Rule 35 motion by appealing its denial to us. Section 2255 motions are no substitute for appeal, and normally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief. See *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).

But the analysis cannot end here. We must ask, in addition, why no appeal was filed, and then assess the adequacy of any asserted reason or excuse. See *Bumgarner v. United States,* 758 F.2d 1292, 1292–93 (8th Cir.1985) (per curiam). Poor Thunder's Section 2255 motion, ¶ 11(d), at p. 4, gives a reason for his failure to appeal from the denial of his Rule 35 motion: "To my knowledge as a pro se litigant there are no appeal remedies available for a Rule 35 Motion once the sentencing court has denied same motion." This statement, while wrong as a matter of law, is nevertheless an excusable default on the part of an uncounselled criminal defendant. (Poor Thunder had no lawyer at the time of his Rule 35 motion.) We are unwilling to apply doctrines of procedural default with full rigor against litigants without lawyers. *Cf. United States v. Glass,* 720 F.2d 21, 23 (8th Cir.1983) (appellate court may reach point not raised below, when appellant was without counsel in trial court). We accept Poor Thunder's proffered reason for failing to appeal (which the government does not controvert) [7] and hold that he may urge his Rule 32(c)(3)(D) claims in this Section 2255 proceeding.

### III.

And so we come to the merits.

Fed.R.Crim.P. 32(c)(3)(D) provides:
If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a

6. This holding makes it unnecessary to address separately Poor Thunder's claim that the Due Process Clause itself was violated. We prefer to decide this case on a nonconstitutional ground. The due-process claim, if upheld, would not produce any relief different from or greater than that obtainable under Rule 32.

7. A claim by a pro se litigant, indigent, prisoner, or otherwise, that he was unaware of his right to appeal is not to be automatically accepted. If the claim is that a petitioner was unaware of his right to appeal directly from his conviction, it will usually be appropriate to reject the claim out of hand, at least if the conviction is a federal one after a plea of not guilty, because Fed.R. Crim.P. 32(a)(2) requires the court in such cases to advise defendants explicitly of their right to appeal, and it will be possible to determine by checking the transcript whether this advice was given. In addition, cases in which defendants are without counsel at the time of their conviction, whether on plea of guilty or after trial, are rare. Even, as here, where the failure to appeal in question relates to a post-judgment order, it may be possible for the government plausibly to allege that defendant in fact did know that he could appeal. In such cases, the trial court would have to make a finding on the point. Here, because the government has not denied appellant's asserted ignorance, a remand for such a finding is not necessary.

finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

There are two main reasons for these requirements: first, the sentence imposed should be based upon accurate information. Second, determinations by the Bureau of Prisons as to appropriate placement and treatment of prisoners, and by the United States Parole Commission as to parole, should be based on accurate information. The Advisory Committee's notes indicate that it was aware of the great reliance placed on presentence reports in the "critical determinations relating to custody or parole," Advisory Committee's notes to Fed.R.Crim.P. 32(c)(3)(D). The Committee wanted to prevent reliance on untrue and unchallenged factual material in these reports by establishing a mandatory procedure for resolving factual disputes. The first step "ensure[s] that a record is made as to exactly what resolution occurred as to controverted matter," *ibid.*, and the second "ensure[s] that this record comes to the attention of the Bureau [of Prisons] or [Parole] Commission when these agencies utilize the presentence investigation report." *Ibid.*

Having in mind these requirements, we shall take up in turn each of the ten different factual assertions in the presentence report that, according to the record, Poor Thunder disagreed with.

 1. Defendant and his lawyer first claimed that the title page of the presentence report contained an incorrect date of arrest. The District Court took no action with respect to this claim of error, but it is obviously insignificant. There is no reason to suppose that a misstatement as to the date on which defendant was arrested would have any material effect on his sentence, his treatment by the Bureau of Prisons, or his parole.

2. It was claimed that the history of defendant's pleas (he initially pleaded not guilty and later changed his plea to guilty) was incorrectly stated. Again, the District Court took no action with respect to this issue, but it is plainly insignificant.

3. The presentence report states that defendant owed Zahn, the person he was accused of killing, $300. Defendant stated that the $300 had in fact been paid, and that he owed Zahn only $20 at the time of the latter's death. The Court made no determination with respect to this claim of error. We believe it also is insignificant, though perhaps slightly less clearly so than the first two claims. The amount of money owed is simply a narrative detail that could have had no effect on the sentence. The government did not claim that the killing had anything to do with the debt that the defendant owed Zahn.

4. The presentence report quotes defendant as saying that he did not know why he pointed a gun at Zahn and pulled the trigger. (Zahn's death apparently occurred when he and defendant were playing Russian roulette.) The defendant objected to this statement, claiming that he had no conscious recollection of having pulled the trigger and that a polygraph test he had taken corroborated this position. The District Court accepted this correction.

 5. The presentence report referred to defendant's "glib tongue" and his tendency to "run his tongue before engaging his brain." The defendant took issue with those characterizations as being conclusionary and reflecting hostility, and the District Court agreed to disregard them.

6. The presentence report referred to a previous offense on the part of defendant. Poor Thunder pleaded guilty to first-degree manslaughter in Pennington County, South Dakota, in 1975, in connection with the death of one Forbes. For this crime he was sentenced to 20 years, and served a little over three. He was on parole from this offense when the present offenses were committed. The presentence report

recounts certain details of the 1975 crime from a police report made at the time, and defendant objected to these details. He agreed to that portion of the report that recited that he had caused an injury to one Boyer, but disagreed with the statement that he strangled Forbes while Forbes was lying on the ground. Defendant claims that he did not strangle Forbes, but rather stabbed him. He stated that he could rebut the police report at length, but he agreed that he had pleaded guilty to the charge of first-degree manslaughter, a plea. that of course acknowledged his own responsibility for the death of Forbes.

This claim of error is potentially the most important, and we therefore set out in full the District Court's disposition of it:

The Court would make it clear that, in the opinion of the Court, in evaluating what must be done here, whether the pattern of the facts or the—of the facts recited in the investigative report is accurate or not, this Court must take into consideration that as a result of a relationship between Forbes and the defendant, Forbes is dead, and that as a result of the relationship, whatever it was, as between Boyer and the defendant, Boyer suffered a knife wound in the chest.

Transcript of sentencing, March 8, 1984 (Tr.) 3.

We read this statement as a disavowal by the District Court of reliance on any of the details contained in the police report with respect to the 1975 crime. Whether those details were accurate or not was irrelevant for sentencing purposes, according to the Court's statement. What mattered was that defendant had killed Forbes and injured Boyer, and defendant did not dispute either of these facts. This is a sufficient compliance with the requirement of Rule 32(c)(3)(D)(ii) that "a determination [be made] that no ... finding is necessary because the matter controverted will not be taken into account in sentencing."

7. The presentence report stated that between 1969 and 1982 defendant had been arrested four times for public miscon-

duct and several times for public intoxication, and that he had also been arrested in the Rapid City area for other matters, these latter charges having all been dismissed. Defendant took issue with this account of his past record, claiming that police would routinely pick him up whenever any kind of a report on his activities was received. The District Court stated that it would "take cognizance of" Poor Thunder's version of the facts "and does not concern itself particularly with that area of the presentence report." We hold that this is sufficient compliance with Rule 32.

8. The presentence report states that one Willa McBridge tried to bring defendant some marijuana while he was in jail. Defendant objected to this statement as irrelevant, because it concerned something that a third person did, and because there was no showing that he had requested the marijuana or used it. The District Court said: "Under the circumstances the Court will disregard this paragraph." Thus, Rule 32 was clearly complied with with respect to this alleged misstatement.

9. The presentence report states that Poor Thunder is an alcoholic and has done little to overcome his problem. Poor Thunder objected to that characterization, stating that he had sought help from a parole officer and at a Sioux Falls alcoholic unit. The District Court made no determination with respect to this issue, but it seems to be more a question of characterization than of fact. The presentence report could, in all likelihood, have been written in a more sympathetic way, but Poor Thunder did not deny that he was an alcoholic, and this is really the only statement of fact, as opposed to opinion, that the presentence report contains on this point. We therefore do not fault the District Court for failing to make a finding of fact on this disputed issue.

10. The presentence report states that "defendant acknowledged carrying a firearm by his own admission during an interview." Defendant objected that his statement had been taken out of context, and

that in fact he had admitted only carrying a firearm in 1973, and, much later, in 1982 and 1983. The report, he complains, implies that he admitted to carrying a firearm routinely. The District Court duly recited defendant's version on this point but did not make an express finding on the issue whether defendant in fact had carried a firearm routinely over a period of years, or had merely carried one at a particular time in the past and had then been without a gun on his person until 1982, when he acquired the gun that was involved in Zahn's death.

Perhaps it would have been better had an express finding been made on this point, but we believe, in context, that no violation of Rule 32 has occurred. Defendant's real complaint is not that the report misstates a fact, but that it leaves a misleading impression. Anyone reading the transcript of the District Court's remarks would realize at least that the presentence report was only a summary and told only part of the story. We believe this is sufficient. Rule 32 must be given a reasonable and practical construction. It should not be turned into a vehicle for verbal quibbles or argumentation about phrasing. The point of the rule is that misstatements of fact material to sentencing or to parole be corrected, not that presentence reports necessarily be phrased in every particular in such a way as to eliminate every nuance or implication to which a defendant might object.

In short, having carefully reviewed each one of the ten objections to the presentence report that are on the record before us, we conclude that no substantial rights protected by Rule 32 have been violated. Some of the matters objected to are plainly insignificant on their face. With respect to others, the District Court accepted the defendant's version of the facts. In the case of still others, including the most important point involved, defendant's objections to the particular facts surrounding the 1975 manslaughter, the District Court sufficiently indicated that it would not consider the disputed matters in imposing sentence.

And finally, as just described, some of the objections are purely argumentative in nature, concern only the phrasing or implications of the report, and do not raise material issues of fact, as opposed to matters of opinion.

In one respect, however, it is plain that Rule 32 was violated, and the government concedes as much. Brief for Appellee 3: "The transcript of the sentencing proceeding was not attached to the presentence investigation." The District Court did later cause a copy of Poor Thunder's written objections to the report to be affixed thereto, but this is not an adequate substitute for the plain requirements of the rule itself. The rule states that a written record of the findings and determinations of the District Court shall be appended to and accompany any copy of the presentence investigation report made available to the Bureau of Prisons or the Parole Commission. We direct the District Court, on remand, to comply with this requirement by sending to the appropriate authorities a copy of the transcript of sentencing proceedings dated March 8, 1984, together with a copy of this opinion.

When this direction has been complied with, Rule 32 will be fully satisfied. There is no occasion for resentencing in this case. We have carefully read the transcript of sentencing, and we are firmly convinced that none of the disputed matters raised by Poor Thunder affected the District Court's decision to sentence him to seven years' imprisonment. It is possible that the presentence report, including its disputed portions, might affect some decision with respect to Poor Thunder by either the Bureau of Prisons or the Parole Commission, but that possibility will be eliminated once our direction that the transcript of sentencing be appended to the report has been carried out.

The judgment of the District Court, dismissing this petition under Section 2255, is affirmed, and the cause is remanded with instructions to comply with the last sen-

tence of Fed.R.Crim.P. 32(c)(3)(D), as indicated in this opinion.

It is so ordered.