Michael **CARLIN,** Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Nos. CIV.A. 3:CV–97–656,
CRIM.A. 3:CR–88–12.

United States District Court,
M.D. Pennsylvania.

May 21, 1998.

his guilty plea as to count 2 (carrying of a firearm during a crime of violence) be vacated and that he be allowed to replead.

For the sake of clarity, the Court shall discuss the Defendant's factual background and then address the two (2) alleged violations starting with Rule 32(c)(3)(D).

## FACTUAL BACKGROUND

The facts as set forth by the parties are as follows: On February 2, 1988, the Defendant, Michael Carlin, was indicted for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and the use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Initially, on February 18, 1988, Carlin and his appointed counsel, attorney James Walker, entered a plea of not guilty before this Court. However, on May 23, 1988, the day set for trial, Carlin decided to change his original plea of not guilty, and pled guilty to both counts in the indictment. Although there was no plea agreement or written plea colloquy, the Court did conduct an oral colloquy on the record. The Court then accepted the plea, ordered a pre-sentence report (PSR), and set the sentencing for June 17, 1988.

The PSR was reviewed and read by attorney Walker on June 13th, and 16th, as well as by Carlin himself on June 17th. (Doc. 80, Exhibit 5, p. 1). The PSR stated specifically, that the § 924(c) conviction carried a mandatory five (5) year term of imprisonment to run consecutively to any additional sentence the Court imposed. The PSR also contained the government's version of the facts in addition to the Probation Officer's findings. On June 17, 1988, attorney Walker filed a sentencing memorandum on behalf of Carlin in which the consecutive nature of § 924(c) was acknowledged, and various objections were made to sections of the PSR. Specifically, the alleged agreement that the Defendant may have had with inmate Robert Wallace, the relevance of the Robert Miller Memorial Fund, the characterization of the Defendant as an aggressive, anti-social or predatory offender, and whether the Defendant caused injury to the bank customers or tellers, played a leadership role in the robbery, or

Alan Ellis, Sausalito, CA, for Plaintiff.

Bruce Brandles, Asst. U.S. Atty., Scranton, PA, for Defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Michael Carlin, Defendant, by his attorneys, LAW OFFICES OF ALAN ELLIS, P.C. submitted the pending motion pursuant to 28 U.S.C. § 2255 (Doc. 76), on April 23, 1997. In the motion, it is alleged that this Court has violated two (2) separate Rules of Criminal Procedure: 32(c)(3)(D) and 11(c)(1). As a remedy for the 32(c)(3)(D) violation, the Defendant has requested that his current sentence be vacated and that the Court grant him re-sentencing. On the alleged 11(c)(1) violation the Defendant has requested that

planned to escape with the assistance of another prisoner.

At the sentencing, attorney Walker again noted the above objections to the PSR, as well as acknowledged in the presence of Carlin, that there was a five (5) year mandatory minimum that could not run concurrent with any other offense. This Court then sentenced Carlin to five (5) years on the bank robbery charge and five (5) years on the § 924(c) charge, the sentences to run consecutive to each other and consecutive to his pending state sentence.

No direct appeal was filed. However, nearly nine years after Carlin's sentence, he filed this 28 § U.S.C. 2255 motion.

### Fed.R.Crim.P. 32(c)(3)(D)

The Rule provides:

If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the Court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account at sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

Fed.R.Crim.P. 32(c)(3)(D) [1]. The Defendant alleges that the Court violated Rule 32(c)(3)(D) when it failed to make a finding with respect to each controverted matter raised by attorney Walker at the sentencing, or to make a determination that no such finding was necessary because the matter controverted would not be taken into account at sentencing. As a result, it is also alleged that the Court failed to append its findings or determination to a copy of the pre-sentence report which was to be made available to the Bureau of Prisons or the Parole Commission. The government does not dispute the fact

that the necessary findings or determination were not made.

Pursuant to our review of the sentencing transcript, we find merit in the Defendant's claim. At the sentencing, the government responded to attorney Walker's points of contention, however, the Court failed to resolve the issues in contention or determine that the controverted matter would not be considered in Carlin's sentencing. Although the government agrees that the proper findings were not made by the Court, it argues that a violation of Rule 32(c)(3)(D) is not cognizable under § 2255. The Government relies on *Johnson v. United States*, 805 F.2d 1284 (7th Cir.1986), for the proposition that § 2255 provides jurisdiction for a Rule 32 violation only if there has been a due process violation. The government also cites a Supreme Court case, *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), in support of its argument that aggravating circumstances must be present to show that the error is a "fundamental defect which inherently results in the complete miscarriage of justice." It is the government's contention that Carlin's argument, that the controverted matter in the PSR will effect his parole, does not demonstrate aggravating circumstances which would raise the violation to the level of a fundamental defect. Therefore, the government recommends the motion be denied because at most the Defendant has shown technical non-compliance to the rules which is not enough to sustain a § 2255 motion.

The Defendant, on the other hand, cites *Poor Thunder v. United States*, 810 F.2d 817 (8th Cir.1987) for the proposition that a Rule 32(c)(3)(D) violation is cognizable on collateral attack under § 2255. In *Poor Thunder*, the court addressed the *Hill* decision, as well as the *Johnson* decision in its opinion. With respect to *Hill*, the Court distinguished the Rule 32(a) violation which the *Hill* court held was not cognizable under § 2255 by acknowledging that although Rule 32(c)(3)(D) addresses just another aspect of sentencing, it focuses on a different need—the need for factual accuracy in a key sentencing docu-

---

**1.** As the Government has pointed out, this version was applicable to offenses committed prior to November 1, 1987; the current version is essentially the same.

ment. *Poor Thunder*, 810 F.2d at 822. The *Poor Thunder* court focused on the second half of the statement cited by the government from the *Hill* case which did not appear in the government's brief, "an omission inconsistent with the rudimentary demands of fair procedure." *Id.* The court held that Poor Thunder did not get the "rudiments of fair procedure" when he was sentenced on the basis of a report that he says was inaccurate. *Id.* Poor Thunder brought the alleged inaccuracies to the attention of the sentencing judge, but the judge neither made findings with respect to the alleged inaccuracies, nor disclaimed reliance on the disputed material. The court also noted that:

"[W]e do not hold that the rule in its every detail is required by the Due Process Clause of the Constitution. But it is designed to safeguard the right, held to be contained in that clause, that defendants be sentenced on the basis of materially accurate facts, or at any rate that they do not be sentenced on the basis of any facts until a fair process for determining accuracy has been made available."

*Poor Thunder*, 810 F.2d at 822.

The Court next addressed the *Johnson* decision in a footnote. It disagreed with *Johnson's* "broader than necessary statement that Rule 32 questions as a class are not cognizable under § 2255," because not all violations of Rule 32 are fungible. *Id.* at 822 n .5. In addition, the Court noted that Rule 32(c)(3)(D) was enacted more than twenty (20) years after the *Hill* decision. *Id.*

Subsequent to shepardizing the *Poor Thunder* case, the Court also reviewed the following two (2) cases: *United States v. Vancol*, 778 F.Supp. 219 (D.Del.1991) and *United States v. Katzin*, 824 F.2d 234 (3d Cir.1987). The court in *Vancol* held that "[A]bsent some assertion by defendant, the sentencing judge cannot know of any alleged inaccuracy necessitating Rule 32(c)(3)(D) findings and there can be no cognizable claim under § 2255." 778 F.Supp. at 225. This case is consistent with *Johnson*, to the extent that a violation of Rule 32(c)(3)(D) was not cognizable under § 2255. However, both of the cases are distinguishable from the case at

bar, because unlike here, the inaccuracies were never brought to the courts attention.

■ In the second case, *United States v. Katzin*, 824 F.2d 234 (3d Cir.1987), the Third Circuit held that a 32(c)(3)(D) violation is cognizable via a motion pursuant to Fed. R.Crim.P. 35. However, in a footnote the Court indicated "we need not decide whether jurisdiction would also be appropriate under 28 U.S.C. § 2255." *Katzin*, 824 F.2d at 238 n. 5. Thus, this issue has still not been addressed by the Third Circuit. However, the Third Circuit did state in the opinion that Rule 32 does impose some responsibility on the courts to protect the accuracy of the parole decision. This notion is buttressed by the Advisory Committee notes which recognize that the Bureau of Prisons and the Parole Commission frequently will rely on the PSR in making critical determinations relating to custody or parole. (Fed.R.Crim. P.32(c)(3)(D) advisory committee's notes). Thus, the "purpose of the rule is to protect the defendant from prejudicial effects on parole or prison custody decisions that may come from inaccuracies in the report". *Id.* at 238. This reasoning is consistent with the cases of *Johnson* and *Vancol* because absent some assertion by the defendant or his counsel, any alleged inaccuracies that may effect the accuracy of a parole decision would remain unknown to the Court. Here, however, the inaccuracies were brought to the attention of the Court, but it did not make a finding as to the controverted matter or determine that it would not be considered during the sentencing. Thus, in light of the Third Circuit's discussion on the purpose of Rule 32, and the fact that the due process clause is designed to safeguard the right of defendant's to be sentenced on the basis of materially accurate facts or at least not be sentenced on the basis of facts until a fair process for determining accuracy has been made available, the law supports the Defendant's position that a Rule 32(c)(3)(D) violation is cognizable under § 2255 on the facts of this case.

■ Having determined that the violation is cognizable under § 2255, we must next determine if the Defendant has waived his claims by failing to raise the issue at sentenc-

ing or on direct appeal. Thus, these claims will be procedurally barred from our review, unless the Defendant can show "both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."[2] *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

■ To establish cause, "a petitioner must present a substantial reason to excuse his procedural default." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir.1994). Here, the Defendant's reason stems from two separate claims, each alleging ineffective assistance of counsel under the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, that attorney Walker was ineffective because he did not request the Court to make findings as to the objections raised at the sentencing, and second, that he did not file a direct appeal alleging a violation of Rule 32(c)(3)(D).

In *Strickland*, the Supreme Court articulated a two-prong test for evaluating claims of ineffective assistance of counsel. First, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. Second, the defendant must also show that his defense was prejudiced and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Certainly, there is no such showing of prejudice here, for the Defendant faced the possibility of a substantially longer sentence than the court imposed. Furthermore, there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052.

■ In light of this standard, we find, based on the evidence that Carlin's first

claim of ineffectiveness is without merit. In *Hess v. Mazurkiewicz*, 135 F.3d 905 (3d Cir. 1998), the court held that defense counsel was not ineffective for failing to call a Pennsylvania State Trooper to testify as to alleged inconsistences in victim statements. It reasoned that such a decision was a "reasonable trial strategy", because defense counsel could have reasonably believed "that the prejudicial effect of this information outweighed any benefit to be gained from Trivelpiece's [Pennsylvania State Trooper] testimony." *Hess v. Mazurkiewicz*, 135 F.3d 905, 910 (3d Cir.1998). Applying the same rational, attorney Walker was not ineffective for failing to request the sentencing judge to make findings as to the controverted matter in the PSR. Attorney Walker could have reasonably believed that if the Court held a hearing and the victims testified, the prejudicial effect would outweigh any benefit to be gained from the hearing. Thus, we will not find counsel ineffective for basing what could have been a reasonable strategy upon his reasonable professional judgment.

■ As for Carlin's second ground of Ineffectiveness, that attorney Walker failed to file a direct appeal, it must first be determined whether Carlin ever "requested" counsel to do so. If he did not, counsel was not obligated to pursue the appeal, because only "when a [petitioner] requests his attorney to take an appeal and his attorney fails to do so, [is] counsel . . . considered to be ineffective [assistance] per se . . . . " *Collison v. United States*, No. Civ. 97.3026, Crim. 92–583–02, 1997 WL 602777 (E.D.Pa. Sept.22, 1997)(citing *Castellanos*, 26 F.3d at 719). In *Collison*, the court allowed petitioner the opportunity to submit an affidavit and supplemental memorandum in order to provide a factual basis to support his allegation. *Collison*, 1997 WL 602777, at *2. The affidavit, however, contained nothing more than a "naked assertion" that counsel had denied his request to file an appeal. Therefore, the court, relying on *Zettlemoyer v. Fulcomer*, held

---

**2.** The Supreme Court has established a narrow exception to this rule. Here, although the Defendant has not argued in the alternative that he would fall under the exception, the Court finds the exception worth noting. In *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d

397 (1986), the Court held that "[I]n an extraordinary case, where a constitutional violation has probably resulted in a conviction of one who is actually innocent, a[F]ederal habeas Court may grant the writ even in the absence of a showing of cause for the procedural default."

that a "naked assertion which is without any support in the record, does not warrant an evidentiary hearing." *See Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3d Cir.1991)(holding that bald assertions and conclusory allegations do not establish sufficient grounds to require an evidentiary hearing).

If the Court was inclined to follow case law precedent, the first step would be to order Carlin and attorney James Walker to submit an affidavit and supplemental memorandum to determine if a factual dispute exists. If so, and Carlin showed support for his position, the Court would hold an evidentiary hearing to determine whether Carlin requested attorney Walker to file an appeal. If the Court determined that Carlin made the request and counsel defied it, then Carlin would have satisfied the "cause" element of the cause and prejudice test.

Even if Carlin could demonstrate cause, he would also be required to show "actual prejudice" in an effort to excuse the procedural default. Here, Carlin cites the case of *United States v. Urian,* 858 F.2d 124 (3d Cir. 1988), as support for his position that "[H]ad counsel taken an appeal based on the court's noncompliance with Fed.R.Crim.P. 32, this case would have been remanded for re-sentencing." (Doc. 76, p. 9). In *Urian,* the Third Circuit "vacate[d] the sentence imposed by the district court and remand[ed] the case so that the district court may complete the record by making the findings required by Fed.R.Crim.P. 32(c)(3)(D)(i) or the determination required by Fed.R.Crim.P. 32(c)(3)(D)(ii)." *Urian,* 858 F.2d at 127, *See also, United States v. Furst,* 918 F.2d 400, 408 (3d Cir.1990)("[W]here a district court has failed to follow the mandate of Rule 32(c)(3)(D), the Circuit has consistently vacated the defendant's sentence and remanded the matter to the district court. On remand, the district court can expressly state that it did not rely upon the information which the defendant disputes and then promptly reimpose sentence. Otherwise, it must make findings concerning the disputed information."). Thus, it appears Carlin could satisfy the "actual prejudice" element of the cause and actual prejudice test.

Therefore, if the Court followed the case law precedent and reached the conclusion that the cause and actual prejudice test was satisfied, the Court would excuse the procedural default and address the merits of Carlin's § 2255 petition. In *Urian,* the court left it to the district court's discretion to decide "whether it is necessary to reopen the sentencing hearing or if it can make the appropriate findings or determination on the basis of the prior record." *Id.* Here, we conclude that it would be unnecessary to reopen the sentencing hearing because the appropriate findings or determination can be made based on the prior record.

■ The sentencing transcript reveals that the court did not determine which, if any, of the controverted issues raised by counsel were true. (Doc 80, Exhibit 7, p. 16). However, the court did mention a number of factors which it considered in imposing Carlin's sentence. Specifically, that his past record shows that he: gets in trouble even in prison, manipulates and continues to hurt people, is hard heartened in the things he does, has been a user of drugs and alcohol, and has used weapons, regardless of how. *Id.* at 16–20. The Court also noted some mitigating factors such as: his lack of a caring family, and the eight (8) to eighteen (18) year sentence he was already serving. *Id.* at 20. In concluding, the Court stated "[S]o I tried to take all of those factors into consideration in arriving at what I think is a responsible and fair sentence." *Id.* Thus, it is clear from the record that the Court did not consider the controverted matter in the PSR. Therefore, whether the controverted matter was accurate or not was irrelevant for sentencing purposes. What was relevant was Carlin's past record which the court referenced during the sentencing colloquy. Thus, the Court sufficiently complied with the requirement of Rule 32(c)(3)(D)(ii) that "a determination [be made] that no … finding is necessary because the matter controverted will not be taken into account in sentencing." *See Poor Thunder,* 810 F.2d at 825.

Applying the law to the record in this case, we find that the proper resolution is for the Court to file a certification that the contested

issues were not considered in reaching the sentencing decision. Specifically, that after reviewing the record, the Court can and does hereby certify that it did not consider the alleged agreement that the Defendant may have made with inmate Robert Wallace, the relevance of the Robert Miller Memorial Fund Raiser, the Government's characterization of the Defendant as an aggressive, anti-social, or predatory offender, or whether the Defendant caused injury to the bank customers or tellers, played a leadership role in the robbery, or planned to escape with the assistance of another inmate. Further support that the court did not consider the controverted matter lies in the specific facts cited by the Court in reaching the sentencing decision, none of which relate to the controverted matter. Therefore, by appending a certification to the pre-sentence report for future use, which in effect disclaims reliance on the alleged inaccuracies, the Court may reimpose the Defendant's sentence without a formal hearing and in compliance with Rule 32(c)(3)(D). *United States v. Blanco,* 884 F.2d 1577, 1583 (3d Cir.1989), *See United States v. Furst,* 918 F.2d 400, 408 (3d Cir. 1990).

### 11(c)(1)

The second issue raised in Carlin's § 2255 petition is that "[D]efendant's guilty plea to Count 2 was not knowing and voluntary as required by the United States Constitution and Fed.R.Crim.P. 11(c)(1) and, therefore, his conviction must be vacated." (Doc. 76, pp. 10, 12). At the time Carlin was sentenced Rule 11(c)(1) provided:

Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that the he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term and, when applicable, that the court may also order the defendant

to make restitution to any victim of the offense.

Fed.R.Crim.P. 11(c)(1).[3]

In order for Carlin to successfully challenge his guilty plea based upon a violation of Rule 11, he must establish that "the violation amounted to a jurisdictional or constitutional error, or that the alleged legal error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the demands of a fair procedure." *Collison,* No. Civ. 97.3026, Crim. 92–583–02, 1997 WL 602777 (E.D.Pa. Sept.22, 1997)(quoting *United States v. Timmreck,* 441 U.S. 780, 783, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979)). In addition, he must also establish that "he was prejudiced in that he was unaware of the consequences of his plea, and, if properly advised, would not have pleaded guilty." *Timmreck,* 441 U.S. at 784, 99 S.Ct. 2085. Thus, the Defendant must show more than a technical violation because "collateral relief is not available when all that is shown is a failure to comply with the formal requirements of" Rule 11. *Id.* at 785, 99 S.Ct. 2085.

In *United States v. Cleary,* 46 F.3d 307 (3d Cir.1995), the court analogized its facts to the Second Circuit case of *Lucas v. United States,* 963 F.2d 8 (2d Cir.), *cert. denied* 506 U.S. 895, 113 S.Ct. 270, 121 L.Ed.2d 199 (1992). In *Lucas,* the Court found that the "District court violated Rule 11(c)(1) when it failed to advise Lucas, at his change of plea hearing, of the maximum penalty for the crime of conviction." Notwithstanding the violation, the court declined to grant collateral relief because:

he [Defendant] acknowledged that he had reviewed the pre-sentence report before sentencing, a report that contained the maximum penalty he faced, including fine and special parole term; because he failed to object to the sentence; because he failed to attempt to withdraw his plea at sentencing, even when invited by the judge to speak; because he failed to pursue a direct appeal on the issue; because he failed to raise the issue in timely motions and because he failed to demonstrate any other prejudice.

---

**3.** This version is essentially the same as the current version of Rule 11(c)(1).

*Lucas,* 963 F.2d at 15. Similarly, here, Carlin is not entitled to collateral relief because the record supports the conclusion that he was not prejudiced by the Court's failure to explicitly state that the mandatory five (5) year sentence was required to run consecutively to any other sentence imposed and, therefore, the maximum potential penalty which Carlin faced was thirty (30) years. At the guilty plea colloquy, the Court stated to Carlin:

> The Court: During that time [the plea colloquy], if you have any other questions on your mind or if you don't understand anything thoroughly, you can either ask me or you can ask your lawyer for further discussion of these matters.

(Doc. 80, Exhibit 4, p. 4). Later in the colloquy, the Court requested Mr. Brandler to state on the record the potential sentence in the case.

> The Court: By the way, I wanted to ask Mr. Brandler, too, and I want you [Carlin] to listen carefully to this so that you know what potential there is for a sentence in this case. What is the maximum sentence?
>
> Mr. Brandler: On Count one, which is the armed bank robbery, it's a 25 year maximum, $250,000.00 fine. And on Count two, which is the carrying of a firearm during a crime of violence, is a five year mandatory sentence and a $250,000.00 fine.

(Doc. 80, Exhibit 4, pp. 14,15).

> The Court then asked Carlin:
>
> The Court: Mr. Carlin, did you understand that those potential sentences, the five year sentence on the weapon is mandatory? That means *it must be imposed,* and there is a potential for a sentence under count one as high as 25 years and $250,000.00 fine.
>
> Did you [Carlin] understand both of those?
>
> The Defendant: Yes, sir.
>
> The Court: You wish to enter a plea knowing that, is that correct?

The Defendant: Yes, sir.

(Doc. 80, Exhibit 4, p. 15)(emphasis added).

We think that these instructions were sufficient to advise Carlin that his sentences would run consecutively, making the maximum potential sentence thirty (30) years. Specifically, when the Court stated "it must be imposed [referring to the mandatory five year minimum], and there is a potential for a sentence under count one as high as 25 years .... " (Doc. 80, Exhibit 4, p. 15). We also note that Carlin stated he understood the Court's instruction and wished to plead guilty. In addition, Carlin never asked any questions or made any statements that would lead the Court to believe that he did not understand his maximum potential sentence. Furthermore, the fact that each count would run consecutively was expressly stated not only on the front cover of the PSR [4], but also in the pre-sentence memorandum submitted by attorney Walker. In the sentencing memorandum, attorney Walker stated, "additionally, this Defendant, through counsel, would like to bring to the attention of the Court several points which we feel should be submitted and considered by the Court at the time of sentencing hearing." (Doc. 80, Exhibit 6, pp. 10)(emphasis added). One of the several points raised was the fact that,

> "Defendant must be sentenced to a mandatory five (5) year term of incarceration which shall not run concurrently with any other term of imprisonment including that imposed for the offense of Armed Bank Robbery, nor shall this mandatory term run concurrent with any other offense. Therefore, we submit that the Defendant will and must receive at least a five (5) year mandatory minimum term for the plea of guilty to the offense of Use of a Deadly Weapon During a Crime of Violence, 18 U.S.C. 924(c)."

(Doc. 80, Exhibit 6, pp. 10,11). This point was reiterated by attorney Walker at the sentencing hearing at which time he also acknowledged that he had reviewed these same issues with Mr. Carlin. (Doc. 80, Exhibit 7, pp. 4,8).

---

**4.** Carlin acknowledged at the sentencing hearing that he received a copy of the PSR prior to sentencing. (Doc. 80, Exhibit 7, p. 3).

Finally, when the Court imposed sentence, it clearly stated that the terms imposed were to run consecutive to each other and to any other time he was currently serving. Even after the Court imposed this sentence, Carlin did not complain, question it, nor ask the Court or counsel to explain it. In fact, it was not until nearly nine years later that Carlin complained about his sentence. Even assuming that the Defendant was not directly told by the Court about the consecutive nature of the firearms charge, he was informed of it in the pre-sentence report and by counsel. In addition, we note that the Defendant's sentence of 5 years on each of the two charges, both to run consecutive to the other, is substantially less than the potential 30 year maximum term of imprisonment which the Defendant faced.

Thus, even if the Court violated Rule 11(c)(1) when it failed to expressly state at the plea colloquy that the maximum potential sentence would be thirty (30) years, Carlin has not been prejudiced. At most this variance from Rule 11 would constitute harmless error pursuant to 11(h)[5]. *See United States v. Renaud,* 999 F.2d 622, 624 (2d. Cir.1993)(noting that Rule 11(h) was intended to cover such minor errors as a modest understatement of the maximum penalty, where the penalty actually imposed did not exceed that indicated in the warnings). Therefore, Carlin's motion with respect to his request to vacate the guilty plea will be denied because he has not shown that even if the district court erred, such an error amounted to a "jurisdictional or constitutional error, or that the alleged legal error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the demands of a fair procedure." *Collison,* No. Civ. 97.3026, Crim. 92–583–02, 1997 WL 602777 (E.D.Pa. Sept.22, 1997)(quoting *United States v. Timmreck,* 441 U.S. 780, 783, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979)).

## *ORDER*

NOW, this 21st Day of May, 1998, it is hereby ORDERED that:

1. The Defendant's motion for habeas corpus relief (Doc. 76), is hereby denied because the Defendant has failed to demonstrate that he is entitled to relief.

2. Based on the Court's review of the record, the Court can and does hereby certify that it did not consider:

   a) the alleged agreement that the Defendant may have made with inmate Robert Wallace,

   b) the relevance of the Robert Miller Memorial Fund Raiser,

   c) the Government's characterization of the Defendant as an aggressive, antisocial, or predatory offender, or

   d) whether the Defendant caused injury to the bank customers or tellers, played a leadership role in the robbery, or planned to escape with the assistance of another inmate, or

any other disputed facts in reaching the sentencing decision. Thus, the Court hereby reimposes the Defendant's sentence of five (5) years on the bank robbery charge and five (5) years on the § 924(c) charge, both sentences to run consecutive to each other and consecutive to any sentence he was serving at that particular time. In addition, the Court also reimposes the assessment of one hundred dollars ($100.00), however, it is ordered that any money already paid toward this assessment be credited to the Defendant's account.

3. A copy of this certification shall be appended to the pre-sentence report and made available to the Bureau of Prisons or the Parole Commission.

4. The Clerk of Court is directed to close this case.

5. Based on the Court's conclusion herein, there is no basis for the issuance of a certificate of appealability.

---

**5.** The version of Rule 11(h) at the time Carlin was sentenced, which is the same as the current provided: "[A]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed. R.Crim.P. 11(h).